El Juez Asociado Señor Feliberti Cintrón
emitió la opinión del Tribunal.
En el proceso de resolver este recurso pautamos sobre varios temas que inciden en el mecanismo de sentencia sumaria. Primeramente, rechazamos el uso de una decla-ración jurada diseñada por una parte, específicamente, para contradecir el testimonio provisto por ésta bajo jura-mento en una deposición anterior, con el propósito de im- *420 pedir que se dicte sentencia sumaria en su contra. Igual-mente, abordamos los requisitos de forma fijados para impugnar satisfactoriamente los hechos materiales que alegadamente no se encuentran en controversia según for-mulados por el proponente de una sentencia sumaria, me-diante la nueva Regla 36 de Procedimiento Civil de 2009, 32 LPRAAp. V.
Por último, interpretamos el concepto justa causa con-signado en el Art. 2(e) y (f) de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada (Ley 80),(1) 29 LPRA see. 185b(e) y (f), mediante el cual se le permite a un patrono cesantear empleados a través de un proceso de reorganiza-ción cuando enfrenta una reducción en el volumen de ven-tas o ganancias de su empresa, sin infringir ese estatuto. Veamos.
I
El Sr. José J. Zapata Berríos (señor Zapata o el recurri-do), su esposa y la Sociedad Legal de Bienes Gananciales compuesta por ambos, presentaron una demanda contra J.F. Montalvo Cash & Carry, Inc. (J.F. Montalvo o la peti-cionaria) por el alegado despido injustificado del recurrido. La reclamación se fundamentó exclusivamente en las dis-posiciones de la Ley 80.
J.F. Montalvo contestó la demanda. Entre sus defensas planteó que medió justa causa para cesantear al señor Zapata. A base de ello, oportunamente sometió una solici-tud de sentencia sumaria para requerir la desestimación de la reclamación del recurrido. En su moción, la peticio-naria, esencialmente, expuso que el 1 de diciembre de 2010 despidió al señor Zapata de su puesto de Coordinador y Ayudante del Presidente como parte de un proceso de reor- *421 ganización suscitado por la reducción en el volumen de ventas de la compañía. A esos efectos, destacó que entre 2008 y 2009 el ingreso neto de la empresa disminuyó de $3,267,705 a $794,787. Igualmente, alegó que para el 1 de diciembre de 2010 también se cesantearon a otros emplea-dos entre los cuales se encontraban el Dr. José Montalvo (hermano del fenecido presidente de la compañía, Sr. Frank Montalvo), la contralora, la secretaria del gerente general, la secretaria del señor Zapata, así como la asis-tente de compra. Por último, sostuvo que no se contrató a otra persona para realizar las funciones correspondientes al cargo que ocupaba el recurrido al momento de su despido.
En apoyo a su solicitud de sentencia sumaria, J.F. Mon-talvo hizo referencia a la deposición tomada al recurrido donde éste admitió que, en calidad de coordinador y ayu-dante del presidente, tenía acceso a los estados financieros de la empresa, por lo que estaba al tanto de su situación económica. Además, sostuvo que el señor Zapata admitió en su deposición que, durante el 2010, le informó al enton-ces Presidente que era necesario tomar medidas para aten-der la pérdida de dinero que se estaba experimentando. Igualmente, el recurrido negó saber si se había contratado un remplazo para su antiguo puesto de trabajo. La peticio-naria también sometió una declaración jurada de su Oficial de Recursos Humanos, quien certificó que no se había sus-tituido al señor Zapata ni se había empleado a otras per-sonas para realizar sus funciones en ese puesto.
El recurrido, basado en su deposición y en una declara-ción jurada, se opuso a la solicitud de la peticionaria, argu-mentando que la alegada pérdida en ventas y ganancias no era sino un pretexto de J.F. Montalvo para despedirlo y que existían hechos en controversia que impedían la resolución del caso por la vía sumaria. A esos efectos, apuntó al pago de bonos de productividad que se hizo a ciertos empleados de la empresa, así como a la contratación de nuevos em- *422 pleados luego de su cesantía. Aseveró que J.F. Montalvo no estaba perdiendo dinero al momento de su despido y que se contrató al Sr. Luis Arroyo Algorri (señor Arroyo) para rea-lizar sus funciones.
Mediante orden emitida el 2 de mayo de 2011, el Tribunal de Primera Instancia inicialmente declaró “no ha lu-gar” la solicitud de sentencia sumaria. Como fundamento para su determinación indicó que existía controversia so-bre si las razones aducidas para el despido constituían “un mero pretexto” de parte de la peticionaria.
J.F. Montalvo sometió entonces una solicitud de recon-sideración, la cual fue eventualmente acogida por el tribunal de instancia. Así pues, el 24 de mayo de 2011, el foro primario dictó sentencia mediante la cual reconsideró su decisión anterior y desestimó en su totalidad la demanda por despido injustificado.(2) Entendió que, a base de todos los escritos sometidos y conforme a la evidencia presen-tada, el despido objeto de este recurso estuvo justificado y respondió a una reorganización provocada por la merma considerable en los ingresos de la empresa. En su senten-cia el juez de instancia hizo referencia a que se despidieron otros empleados conjuntamente con el señor Zapata. Igual-mente, dictaminó que no se contrató a un sustituto para realizar las funciones inherentes al puesto del recurrido.
El Tribunal de Primera Instancia también determinó que el señor Zapata no logró rebatir los hechos medulares según consignados por J.F. Montalvo en su moción, con-forme lo dispuesto en la Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V. Resolvió, además, que el pago de bonos de productividad no estaba reñido con la reducción en las ventas. De igual manera, rechazó los intentos del señor Zapata de refutar que la empresa estuviese per-diendo dinero al momento de su despido y que no se con- *423 trataron nuevos empleados ni un sustituto para su puesto. Sobre este particular, el foro de instancia resolvió que el señor Zapata no podía, mediante una declaración jurada posterior, contradecir la información previamente admi-tida por él bajo juramento durante su deposición.
Inconforme, el señor Zapata apeló el fallo en su contra ante el Tribunal de Apelaciones. Alegó que al resolver de esa manera el foro primario descansó en alegaciones caren-tes de prueba. A la vez, planteó que existían múltiples con-troversias de hechos esenciales que impedían la resolución sumaria de su reclamación por despido injustificado.
El foro apelativo intermedio revocó la determinación del tribunal de instancia mediante sentencia emitida el 29 de noviembre de 2011.(3) Resolvió que, aunque los estados de cuenta presentados por J.F. Montalvo evidenciaban una re-ducción en las ventas de la empresa, el recurrido puso en tela de juicio la necesidad de su despido como parte de una restructuración, lo que exigía la celebración de una vista evidenciaría. El Tribunal de Apelaciones apoyó su dicta-men en las alegaciones del recurrido a los efectos de que la compañía continuó reclutando empleados, entre los cuales identificó al señor Arroyo como la persona que lo sustituyó en sus funciones, y que, además, se entregaron bonos de productividad a otros empleados luego de su despido.
El Tribunal de Apelaciones declinó reconsiderar su de-terminación según solicitado por J.F. Montalvo, propi-ciando este recurso. Como único error, la peticionaria aduce que incidió el foro apelativo intermedio al denegar su solicitud de sentencia sumaria y concluir que existen controversias de hechos materiales en controversia. A esos efectos, sostiene que el recurrido no logró rebatir los he-chos medulares según expuestos en su solicitud de senten-cia sumaria, por lo que procede desestimar la acción de despido injustificado instada en su contra. Específica- *424 mente, plantea que los hechos consignados en la declara-ción jurada del señor Zapata son inapropiados para propó-sitos de este caso, ya que resultan contrarios al testimonio previamente ofrecido en su deposición.
Expedido el auto de certiorari solicitado y contando con la posición de ambas partes, procedemos a resolver.
II
Ley 80
La Ley 80 fue aprobada con el fin primordial de proteger “de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo mediante la aprobación de una ley que, a la vez que otorgue unos remedios más justicieros y consubstanciales con los daños causados por un despido injustificado, desaliente la incidencia de este tipo de despido”. Exposición de Motivos de la Ley 80 (1976 Leyes de Puerto Rico 267, 268). Véase Feliciano Martes v. Sheraton, 182 DPR 368 (2011). Véase, también, Vélez Cortés v. Baxter, 179 DPR 455 (2010), citando a Díaz v. Wyndham Hotel Corp., 155 DPR 364 (2001).
Cónsono con lo anterior, se le exige a los patronos el pago de una mesada a favor de aquellos empleados despe-didos sin que medie justa causa para ello.(4) Feliciano Martes v. Sheraton, supra.
Las circunstancias que constituyen “justa causa” aparecen detalladas en el Art. 2 de la Ley 80 (29 LPRA sec. 185b). Estas incluyen tanto motivos fundamentados en la conducta del empleado como razones de índole empresarial. En cuanto a estas últimas “[s]e contemplan aquí situaciones que no son imputables al obrero pero que son de tal naturaleza que su despido resulta prácticamente inevitable dentro *425 de las normas usuales y ordinarias que imperan en el manejo de los negocios [...]”. (Enfasis nuestro). Informe Conjunto, Comisiones de Trabajo y Derechos Civiles y Servicio Público, P. del S. 1112, 7ma Asamblea Legislativa, 3ra Sesión Ordinaria, 23 de abril de 1975. Véase, además, Informe de la Cámara de Representantes, Comisión de Trabajo y Asuntos del Veterano, P. del S. 1112, abril de 1976. “[P]uede haber justa causa para despedir a un empleado por hechos no imputables a éste y sí al patrono [...]”. R.N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño, San Juan, [sin Ed.], rev. 2005, pág. 120.
De esta manera se reconoce que pueden surgir condiciones en la operación de los negocios que requieran cesantear empleomanía sin que ello necesariamente contravenga las disposiciones de la Ley 80. Según provisto en el articulado mencionado, se permiten despidos sin obligación de pagar la mesada cuando la entidad corporativa enfrenta alguna de las situaciones siguientes: (i) el cierre total, temporero o parcial de las operaciones del establecimiento; (ii) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público, y (iii) reducciones en empleo que se hacen necesarias debido a reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido. 29 LPRA sec. 185b(d), (e) y (f), respectivamente.
Estas tres causas “[e]stán relacionadas a actuaciones del patrono dirigidas a la administración de su negocio, y principalmente se presentan por razones de índole econó-mica que surgen según la operación diaria de las empresas”. Díaz v. Wyndham Hotel Corp., supra, pág. 376. Véase, además, C. Zeno Santiago y V.M. Bermúdez Pérez, Tratado de derecho del trabajo, San Juan, Pubs. JTS, 2003, *426 págs. 104-105; Delgado Zayas, op. cit., pág. 120. A través de este precepto se contemplan escenarios vinculados a la viabilidad del puesto o de la empresa en un momento determinado. Whittenburg v. Col. Ntra. Sra. Del Carmen, 182 DPR 937 (2011).
Es claro que el Art. 2(e) de la Ley 80, supra, permite despedir empleados sin tener que pagar la compensación fijada por ese estatuto si esta decisión se toma como parte de una reorganización empresarial que así lo requiere. Un patrono puede modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad, siempre que responda a una restructuración bona fide.
De manera similar, mediante el Art. 2(f) de la Ley 80 (29 LPRA sec. 185b(f)), la situación económica provocada por la baja en la producción, ventas o ganancias en una empresa puede llevar al patrono a tomar medidas necesarias para limitar los gastos, tales como disminuir la plantilla laboral. Sin embargo, esta disposición no pretende que toda merma en ventas o ganancias se traduzca en justa causa para un despido. Por el contrario, esta aplicará únicamente a aquellas situaciones en las cuales la aludida disminución sea una sustancial al punto que atente contra la continuidad de la empresa.
Bajo la Ley Núm. 50 [de 20 de abril de 1949, 29 LPRA ant. secs. 183-185, antecesora de la Ley 80] la falta de trabajo y actividad en el establecimiento del patrono era causa justifi-cada para el despido [...] Igualmente al amparo de esa ley una baja pronunciada en la producción de un establecimiento o la reducción de ventas o ganancias era, presumiblemente, causa justificada de despido, como lo es por disposición expresa bajo la Ley Núm. 80, supra.
Cualquier baja en producción, o en ventas o en ganancias, sin embargo, no justifica el despido. Tal reducción en ventas, *427 ganancias o producción real o prevista, debe ser significativa a tal grado como para amenazar la estabilidad y solvencia eco-nómica del negocio. Guía revisada para la interpretación y aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, Departamento del Trabajo y Recursos Humanos de Puerto Rico, 21 de septiembre de 2000, pág. 44 (Guía Revisada).
Claro está, para poder justificar el despido al amparo de cualquiera de estas modalidades el patrono debe presentar evidencia acreditativa del plan de reorganización implan-tado, así como su utilidad, o de la alegada disminución en la producción, ventas o ganancias, según corresponda.
Específicamente, se rechazan mediante el Art. 2 de la Ley 80, supra, actuaciones sin fundamento que no vayan dirigidas a atender asuntos concernientes al bienestar de la gestión empresarial y a la salud fiscal de la empresa. Así lo reconoce el propio estatuto al disponer que “[n]o se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento [...]”. íd.
Los cambios en la empresa, implantados como parte de una reorganización, según provistos en el Art. 2(e) de la Ley 80, supra, pueden acarrear el despido y el reclutamiento simultáneo de personal. Ello obedece a que las reformas en ocasiones exigen prescindir de labores hasta entonces útiles para el funcionamiento del negocio y la incorporación de posiciones nuevas con destrezas diferentes necesarias para lograr unas metas empresariales actualizadas.
Cabe notar que, como parte del proceso de despidos correspondiente a los casos provistos en los incisos (d), (e) y (f) del Art. 2 de la Ley 80, supra, se le requiere a la empresa retener a los empleados de mayor antigüedad condicionado a “que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro *428 de su clasificación ocupacional que puedan ser desempeña-dos por ellos [...]”. Art. 3 de la Ley 80 (29 LPRA sec. 185c). Claro está, lo anterior será de este modo, siempre y cuando el empleado de más tiempo en la empresa cuente con las destrezas necesarias para realizar las tareas asociadas con el puesto que pasa a ocupar, o que pueda adiestrarse para realizarlas en un tiempo corto y a un costo mínimo. Guía Revisada, pág. 43.
De igual manera el Art. 3 de la Ley 80, supra, provee para que se le otorgue prioridad a los empleados cesanteados para ocupar los puestos que suijan en la empresa durante los seis meses siguientes a su despido. Ello, siempre y cuando los nuevos puestos requieran el desempeño de la-bores iguales o similares a las ejercitadas por el empleado cesanteado al momento de su despido y se encuentren en la misma clasificación ocupacional. El orden que se ha de seguir para reclutar nuevos empleados debe adherirse a los mismos criterios de antigüedad consignados en el Art. 3 de la Ley 80, supra.
Dada su naturaleza reparadora, las disposiciones de la Ley 80 deben ser interpretadas liberalmente a favor del trabajador. Vélez Cortés v. Baxter, supra; Rivera v. Pan Pepín, 161 DPR 681 (2004). A tales fines, el remedio de la mesada provisto por la Ley 80 tiene como propósito ayudar al trabajador despedido a enfrentar sus necesidades económicas entre tanto se reubica en el mercado laboral. García Burgos v. A.E.E.L.A., 170 DPR 315 (2007); Díaz v. Wyndham Hotel Corp., supra.
En una acción por despido injustificado incoada por un empleado, es el patrono quien tiene el peso de la prueba para establecer que el despido estuvo justificado. Díaz v. Wyndham Hotel Corp., supra. Así pues, como parte del esquema de protección laboral implantado a través de la Ley 80, una vez se presenta una acción para alegar un *429 despido sin justa causa se activa una presunción de que el despido fue injustificado y recae sobre el patrono la obliga-ción de rebatirla. Para ello tiene que probar, mediante preponderancia de la evidencia, los hechos constitutivos de alguno de los fundamentos eximentes de responsabilidad según consignados en el Art. 2 de la Ley 80, supra. Art. 8(a) de la Ley 80 (29 LPRA sec. 185k(a)). Rivera Figueroa v. The Fuller Brush Co., 180 DPR 894 (2011); Díaz v. Wyndham Hotel Corp., supra; Belk v. Martínez, 146 DPR 215 (1998).
Cónsono con lo anterior, es menester que el patrono establezca, igualmente, un nexo causal entre la razón o razones aducidas, según provistas en el Art. 2 de la Ley 80, supra, y el despido en cuestión.
[L]a mera existencia de cambios tecnológicos de producción, de reorganización o la reducción de la producción, ventas o ganancias, entre otros, de por sí no justifican el despido de empleados. Es a la empresa a quien incumbe, por mandato de la ley, demostrar que por esas circunstancias se vio en la necesidad de despedir empleados. En otras palabras, el patrono en todo momento deberá probar la justa causa del despido. (Cita omitida). Delgado Zayas, op. cit., pág. 122.
De manera que en este caso, para J.F. Montalvo preva-lecer en su posición, según propuesta en la solicitud de sentencia sumaria, le toca demostrar que el despido del señor Zapata estuvo justificado conforme a las disposicio-nes de la Ley 80. Para ello se le exige probar, mediante evidencia incontrovertida, que la cesantía del recurrido no fue producto de un mero capricho o una arbitrariedad de su parte, sino que respondió a una reorganización in-terna motivada por consideraciones de índole económica en función de la disminución en volumen de sus ventas o ganancias.
*430 III

Sentencia sumaria

El mecanismo de sentencia sumaria tiene como finalidad “propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales”. Const. José Carro v. Mun. Dorado, 186 DPR 113, 128 (2012). Véase Mejias et al. v. Carrasquillo et al., 185 DPR 288 (2012). Conforme a lo dispuesto en la Regla 36.3(e) de Procedimiento Civil, supra, procede dic tar sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica. Consecuentemente, se permite disponer de asuntos pendientes ante el foro judicial sin necesidad de celebrar un juicio, ya que únicamente resta aplicar el derecho a los hechos no controvertidos. Const. José Carro v. Mun. Dorado, supra; Mejias et al. v. Carrasquillo et al., supra; Abrams Rivera v. ELA, 178 DPR 914 (2010); Nieves Díaz v. González Massas, 178 DPR 820 (2010). Su utilidad como vehículo para agilizar los procesos judiciales y descongestionar los tribunales resulta indiscutible.
Las Reglas de Procedimiento Civil de Puerto Rico de 2009, las cuales aplican a los hechos objeto de este recurso, aportaron cambios importantes en el trámite de las solicitudes de sentencia sumaria dirigidos a facilitar la labor adjudicativa de los tribunales y promover de este modo su utilización. Véase, por ejemplo, Ramos Pérez v. Univisión, 178 DPR 200 (2010).
A estos efectos, y siguiendo lo provisto en las enmiendas a la Regla 56 de Procedimiento Civil Federal en vigor a *431 partir de 2010,(5) y las directrices establecidas en sus re-glas locales por algunos tribunales de distrito en la esfera federal,(6) se incorporaron ciertos requisitos de forma apli-cables tanto a las solicitudes de sentencia sumaria como a las oposiciones correspondientes, los cuales aparecen detallados en la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V.(7)
*432 Así pues, en lo que respecta particularmente a los he-chos relevantes sobre los cuales la parte promovente aduce que no existe una controversia sustancial, esta parte está obligada a desglosarlos en párrafos debidamente numera-dos y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. Regla 36.3(a)(4) de Procedi-miento Civil, 32 LPRAAp. V.
Igualmente, la contestación a la moción de sentencia sumaria tiene que ceñirse a ciertas exigencias en lo ati-nente a los hechos. Primeramente, recae sobre la parte que responde el deber de citar específicamente los párrafos se-gún enumerados por el^promovente que entiende están en controversia y, para cada uno de los que pretende contro-vertir, detallar la evidencia admisible que sostiene su im-pugnación con cita a la página o sección pertinente. Regla 36.3(b)(2) de Procedimiento Civil, 32 LPRAAp. V.
De otra parte, puede también el oponente someter he-chos materiales adicionales que alegadamente no están en disputa y que impiden se dicte sentencia sumaria. Le compete entonces, similar al proponente, enumerarlos en pá-rrafos separados e indicar la pieza evidenciaría que los apoya con referencia específica al fragmento de esta en que descansa cada aserción. Regla 36.3(b)(3) de Procedimiento Civil, 32 LPRAAp. V.
Se dispone para que, de proceder en derecho, el tribunal dicte sentencia sumaria a favor del promovente si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada. Regla 36.3(c) de Procedimiento Civil, 32 LPRAAp. V.
De igual forma, toda relación de hechos propuesta por cualquiera de las partes que se encuentre sustentada se- *433 gún exige ese precepto podrá considerarse como admitida “a menos que esté debidamente controvertida conforme lo dispone esta regla”. Regla 36.3(d) de Procedimiento Civil, 32 LPRAAp. V.
Como parte del nuevo esquema para disponer de una solicitud de sentencia sumaria, se le concede también al tribunal la potestad de excluir los hechos propuestos por cualquiera de las partes que no hayan sido debidamente numerados o que no tengan correlación específica a la evi-dencia admisible que supuestamente los sostiene. Regla 36.3(d) de Procedimiento Civil, supra.
Más aún, el juzgador no está obligado a tomar en cuenta aquellas porciones de declaraciones juradas o de cualquier otra evidencia admisible que no hayan sido expresamente citadas por la parte en la relación de hechos correspon-diente de su escrito. Regla 36.3(d) de Procedimiento Civil, supra.
Esto quiere decir que, si la parte contraria se aparta de las directrices consignadas en el mencionado precepto, en-tre las que se encuentra específicamente la obligación de aludir al número del hecho propuesto que se pretende con-tradecir, el tribunal podrá no tomar en consideración su intento de impugnación.
Igualmente, aunque en el proceso de considerar una so-licitud de sentencia sumaria el tribunal retiene la discre-ción de examinar evidencia admisible que obre en los autos, pero que ha sido omitida por las partes, este no se encuentra obligado a hacerlo. Puede, conforme al meca-nismo actual, obviar material que las propias partes hayan pasado por alto en sus escritos y resolver estrictamente a base de lo que haya sido presentado acatando el método procesal consignado en la nueva Regla 36.3 de Procedi-miento Civil, supra.
Según se desprende de lo anterior, el método recién implantado coloca sobre las partes, quienes conocen de primera mano sus respectivas posiciones, así como la *434 evidencia disponible en el caso, el deber de identificar cada uno de los hechos que estiman relevantes, al igual que la prueba admisible que los sostiene. Se facilita, por lo tanto, el proceso adjudicativo al poner al tribunal en posición de evaluar conjuntamente las versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba que alegadamente los apoya. Este sistema cla-ramente agiliza la labor de los jueces de instancia y pro-pende la disposición expedita de aquellas disputas que no necesitan de un juicio para su adjudicación.
Es por ello que mediante estas nuevas disposiciones nuestro ordenamiento procesal expresamente le exige a la parte oponente examinar cada hecho consignado en la solicitud de sentencia sumaria y, para todos los que considere que existe controversia, identificar el número del párrafo correspondiente y plasmar su versión contrapuesta fundamentada en evidencia admisible. La numeración no es un mero formalismo, ni constituye un simple requisito mecánico sin sentido. Por el contrario, tiene un propósito laudable, por lo que su relevancia es indiscutible y queda claramente evidenciada luego de una interpretación integral de las enmiendas acogidas en el 2009. De lo contrario, las enmiendas a la Regla 36 de Procedimiento Civil de 2009, supra, no tendrían valor práctico alguno.
Recordemos que las decisiones discrecionales que toma el Tribunal de Primera Instancia no serán revo-cadas a menos que se demuestre que ese foro abusó de su discreción. Véanse, por ejemplo: VDE Corporation v. F & R Contractors, 180 DPR 21, 41 (2010); Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009). El propósito de esa regla consiste en que los foros apelativos no deben pretender administrar ni manejar el trámite regular de los casos ante el foro primario. Es cierto que “[l]a tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacio- *435 nado con el concepto de razonabilidad”. Rivera y otros v. Bco. Popular, 152 DPR 140, 155 (2000). Por eso hemos de-finido la discreción como “una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera”. (Cita omitida). IG Builders et al. v. BBVAPR, 185 DPR 307, 338 (2012). Véase Pueblo v. Rivera Santiago, supra. De esa manera, la discreción se “nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna”. Santa Aponte v. Srio. del Senado, 105 DPR 750, 770 (1977). De igual forma, “no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho”. (Cita omitida). Bco. Popular de P.R. v. Mun. de Aguadilla, 144 DPR 651, 658 (1997). Véase, además, IG Builders et al. v. BBVAPR, supra.
Un tribunal abusa de su discreción
[...] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material impor-tante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su de-cisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente. Pueblo v. Rivera Santiago, supra, pág. 580.
IV
A. Hechos propuestos por las partes
Conforme a lo anterior, inicialmente nos toca examinar los hechos según propuestos por las partes en sus respec-tivos escritos para verificar si, en efecto, el tribunal de ins-tancia actuó correctamente y si se acataron las formalida- *436 des dispuestas en la Regla 36.3 de Procedimiento Civil de 2009, supra, según descritas anteriormente.(8)
En su solicitud de sentencia sumaria, J.F. Montalvo so-metió los siguientes “Hechos que no están en controversia” debidamente sustentados:
1. El querellante trabajó en J.F. Montalvo desde el 2002 hasta el lero de diciembre de 2010.
2. El querellante fue despedido de J.F. Montalvo debido a una reorganización realizada por la Compañía el lero de diciembre de 2010.
3. El querellante admitió que tiene conocimiento de que en la reorganización que se llevó a cabo en J.F. Montalvo el lero de diciembre de 2010 se cesantearon a otros empleados.
4. El querellante admitió que entre las personas cesanteadas el lero de diciembre de 2010 se encuentra el Dr. José Mon-talvo quien es el hermano del Presidente de la Compañía, el Sr. Frank Montalvo.
5. El lero de diciembre de 2010 también se cesanteó a María de los Ángeles González quien ocupaba la posición de Contra-lora, Carmen García, quien ocupaba la posición de Secretaria del Gerente General, Diana Ramos, quien ocupaba la posición de Secretaria del querellante y Nayda Rodríguez quien ocu-paba la posición de Asistente de Compra.
6. El querellante ocupaba la posición de Coordinador y Ayu-dante del Presidente para la fecha de su despido.
7. El querellante admitió que era la única persona que ocu-paba la posición de Coordinador y Ayudante para la fecha de su despido.
8. El querellante admitió que la posición de Coordinador y Ayudante del Presidente era bien importante y que tenía ac-ceso a los estados financieros de J.F. Montalvo.
9. El querellante admitió que para la fecha de su despido (lero de diciembre de 2010), J.F. Montalvo estaba reflejando una reducción en el volumen del negocio.
10. El querellante admitió que en una ocasión durante el año 2010 le informó a Frank Montalvo que había que tomar medi-das ya que se estaba perdiendo dinero en la Compañía.
11. El querellante admitió que del año 2008 al 2009 el ingreso neto de J.F. Montalvo bajó de $3,267,705 a $794,787.
12. El querellante no tiene conocimiento si en J.F. Montalvo han contratado a alguien para ocupar su posición de Coordi- *437 nador y Ayudante del Presidente. A tales efectos, es menester mencionar que Migdalia Peña, Directora del Departamento de Recursos Humanos de la Compañía, declaró bajo juramento que al día de hoy en J.F. Montalvo no se ha contratado a nadie para realizar las funciones que ejercía el querellante en su posición de Coordinador y Ayudante del Presidente.
En su oposición a la solicitud de sentencia sumaria el recurrido no aludió específicamente a ninguno de los he-chos propuestos por J.E Montalvo reseñados. Simplemente se limitó a argumentar que la peticionaria utilizó el pre-texto de la merma en ventas y ganancias del negocio para despedirlo y enumeró los siguientes hechos, los cuales de-nominó como “Hechos materiales que están en controver-sia”:
1. El despido del señor Zapata de J.F. Montalvo fue injustifi-cado toda vez que no cumplió con los requisitos establecidos en la Ley 80 del 30 de mayo de 1976 (29 LPRA 185 et ais.).
2. J.F. Montalvo dio bonos de productividad a ciertos emplea-dos, luego de haber cesanteado al señor Zapata.
3. J.F. Montalvo no estaba perdiendo dinero al momento de despedir al señor Zapata.
4. J.F. Montalvo contrató empleados luego de haber cesan-teado al señor Zapata.
5. J.F. Montalvo contrató los servicios del Sr. Luis Arroyo Al-gorri para que realizara las funciones que ejercía el señor Zapata.
Ante este escenario procesal, el juez de instancia aceptó como ciertos los doce hechos presentados por J.F. Montalvo como parte de su moción, indicando que el señor Zapata incumplió con las disposiciones de la Regla 36.3 de Proce-dimiento Civil de 2009, supra, “al no discutir los hechos incontrovertidos expuestos por [...] J.F. Montalvo en su Su-maria como requiere la Regla en cuestión [...].” Sentencia del Tribunal de Primera Instancia, pág. 11.
Resulta indiscutible que la parte recurrida no sometió “una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de *438 buena fe controvertidos” según requiere la Regla 36.3(b)(2) de Procedimiento Civil de 2009, supra. Según las nuevas disposiciones procesales relativas al trámite de una solici-tud de sentencia sumaria, al recurrido no rebatir ninguno de los doce hechos materiales que no están en controversia, según formulados por J.F. Montalvo conforme dispone el aludido precepto, estos podían darse por admitidos y así quedó consignado en la sentencia emitida por el foro de instancia.
Por consiguiente, las cinco aseveraciones propuestas por el señor Zapata se considerarán en la medida en que sugie-ran hechos materiales adicionales que hagan improcedente, como cuestión de derecho, dictar sentencia sumaria, según solicitado por J.F. Montalvo. Ello es así puesto que, tal como indicáramos, al no refutar los hechos materiales que no es-tán en controversia propuestos por la peticionaria de la forma y manera expresamente provista en la Regla 36.3(b)(2) de Procedimiento Civil de 2009, supra, el tribunal puede considerarlos como no controvertidos según lo dis-puesto en la Regla 36.3(c) y (d) de Procedimiento Civil de 2009, supra.
El foro primario examinó las cinco relaciones fácticas propuestas por el recurrido y concluyó que estas no impe-dían el que se dictase sentencia sumaria. Pasamos entonces a repasar individualmente los hechos enumerados por el re-currido para determinar si, en efecto, imposibilitan el que se conceda la moción de sentencia sumaria en cuestión.
1. Violación de la Ley 80
El recurrido sostiene que su despido fue injustificado por-que se incumplió con los requisitos de la Ley 80. No es ne-cesario atender esta aseveración, pues constituye mera-mente una conclusión de derecho. Según esta alegación el recurrido no hace mención de evento o suceso alguno ni vin-cula su planteamiento con prueba admisible que lo apoye.
*439 2. Bonos de productividad
En su segunda aseveración, el señor Zapata trató de cuestionar la veracidad de la situación económica de la em-presa aludiendo al pago de bonos de productividad a cier-tos empleados luego de su despido. J.F. Montalvo objetó esta alegación aduciendo que resultaba contraria al testi-monio vertido por el recurrido en su deposición. Concreta-mente planteó que, en respuesta a preguntas específicas del abogado de la peticionaria para que identificara las ra-zones por las cuales alegaba que su despido fue injustifi-cado, el señor Zapata nunca mencionó este fundamento. Ciertamente, como respuesta al interrogatorio que se le hiciera en esa deposición el señor Zapata se limitó a relatar asuntos relacionados a la contratación de otros empleados, así como la de un supuesto sustituto en sus funciones. No fue hasta que, confrontado con la solicitud de sentencia sumaria de la peticionaria, el señor Zapata trajo a colación por primera vez el asunto de los bonos de productividad. Sin embargo, como parte de su declaración jurada en apoyo a su oposición a que se dictara sentencia sumaria en su contra, el señor Zapata no brindó explicación alguna para adelantar esta información por primera vez en esa oposi-ción, a pesar de que resultaba fundamental a su reclama-ción de despido sin justa causa.
En la esfera federal un gran número de los tribunales a nivel de circuito de apelaciones consistentemente ha resuelto que le está vedado a una parte intentar suscitar una controversia de hechos materiales en respuesta a una solicitud de sentencia sumaria valiéndose de un testimonio reciente que resulta contrario a una declaración bajo juramento emitida, anteriormente, si no se provee una explicación para la contradicción entre ambas. 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d Sec. 2726 (1998); 11 Moore’s Federal Practice 3d Sec. 56.94[5][a]; J.A. Cuevas Segarra, Tratado de dere- *440 cho procesal civil, 2da ed., San Juan, Pubs. JTS, 2011, T. III, pág. 1079. Véanse, por ejemplo: White v. Baptist Memorial Health Care Corp., 699 F.3d 869 (6to Cir. 2012); Kernel Records Oy v. Mosley, 694 F.3d 1294 (11mo Cir. 2012); Yeager v. Bowlin, 693 F.3d 1076 (9no Cir. 2012); Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105 (1er Cir. 2006); Beckel v. Wal-Mart Associates, 301 F.3d 621 (7mo Cir. 2002).
Esta norma ha sido denominada como “sham affidavit doctrine”, ya que el propósito de la declaración posterior es dar una versión simulada, ficticia o falsa de hechos medu-lares con el propósito específico de impedir que se dicte sentencia sumaria en su contra.
El Tribunal Supremo de Estados Unidos reconoció el uso generalizado de esta práctica, resumiéndola así:
The lower courts [...] have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party’s earlier sworn deposition) without explaining the contradiction or attempting to résolve the disparity. Cleveland v. Policy Management Systems Corp., 526 US 795, 806 (1999).
Así pues, en el proceso de disponer de una solicitud de sentencia sumaria, el juzgador no podrá tomar en conside-ración una declaración jurada suscrita por la parte adversa si su contenido es claramente incompatible con una versión de los hechos dada anteriormente y el exponente no aclara, a satisfacción del tribunal, la discrepancia entre las dos posiciones. Dicho de otro modo, se rechazará una declara-ción subsiguiente si la inconsistencia entre las dos declara-ciones resulta evidente y no se ofrece una explicación ade-cuada para la nueva versión.
Claro está, este mecanismo debe utilizarse con pruden-cia y limitarse únicamente a situaciones en las que la de-claración inicial contiene respuestas inequívocas a pregun- *441 tas claras, precisas y libres de ambigüedad sobre un hecho medular. Yeager v. Bowlin, supra.
A [...] court may disregard an affidavit as a sham when a party to the suit files an affidavit that contradicts, without explanation, prior deposition testimony on a material fact. The sham affidavit rule should be applied sparingly, [...] and only when the earlier deposition testimony consists of clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [...] (Citas, comillas y corchetes omitidos). Kernel Records Oy v. Mosley, supra, pág. 1300 esc. 6.
Véanse, además, Yeager v. Bowlin, supra; Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., supra. Igualmente, se requiere que la inconsistencia entre las dos versiones sea una manifiesta o patente. Van Asdale v. International Game Technology, 577 F.3d 989 (9no Cir. 2009).
Lo anterior no impide que la parte adversa elabore, ex-plique o clarifique respuestas a preguntas formuladas du-rante su deposición por el abogado de la parte proponente de la sentencia sumaria. Tampoco se refiere a inconsistencias de poca trascendencia que resultan de discrepancias o erro-res de buena fe o de evidencia descubierta posteriormente. Íd.
Esta doctrina incide directamente en el procedimiento de sentencia sumaria según provisto en el ordenamiento procesal. Permitir a una parte utilizar un subterfugio para retractarse de su testimonio bajo juramento, con el único propósito de evitar que se dicte sentencia sumaria, resulta contrario al objetivo que persigue la Regla 36 de Procedi-miento Civil de 2009, supra. Tampoco se adelanta el obje-tivo de la Regla 36 de Procedimiento Civil de 2009, supra, cuando una parte brinda una respuesta a medias en una deposición, reteniendo información pertinente, para luego presentarla de forma acomodaticia en la oposición a una moción de sentencia sumaria. Cónsono con lo anterior, se ha reconocido que esta doctrina resulta vital para preser-var la utilidad del mecanismo de sentencia sumaria. Yea *442 ger v. Bowlin, supra; Van Asdale v. International Game Technology, supra.
Habida cuenta de la importancia que reviste la utiliza-ción del procedimiento de sentencia sumaria en nuestro sistema judicial, juzgamos conveniente aplicar estos prin-cipios en aquellas situaciones en que una parte procura ingeniarse supuestos hechos materiales contrarios a un testimonio previo ofrecido bajo juramento, con el propósito de impedir que se dicte sentencia sumaria en su contra.
Ahora bien, retomando los eventos objeto del recurso ante nos, y conforme señalado, a pesar de las preguntas del abogado de J.F. Montalvo solicitándole específicamente que indicara las razones para alegar que su despido fue injusti-ficado, el recurrido nunca mencionó en su deposición el tema de los bonos de productividad. Como respuesta al in-terrogatorio se limitó a relatar asuntos relacionados a la contratación de otros empleados, así como la de un supuesto sustituto en sus funciones. Tampoco ofreció como parte de su declaración jurada explicación alguna para adelantar esta información por primera vez en su oposición a la solici-tud de sentencia sumaria, a pesar de que resultaba fundamental a su reclamación de despido sin justa causa.
La equidad requiere que los litigantes actúen de buena fe en el trámite judicial y que durante el proceso de descubrimiento de prueba la información fluya abiertamente para permitirle a las partes prepararse adecuadamente y así evitar sorpresas. No hay cabida en el litigio para estrategias dirigidas a prevalecer a toda costa sin referencia a la justiciad.(9) Es esencial que el procedimiento *443 sea justo y permita que salga a relucir la verdad a su de-bido tiempo, haciendo posible que se disponga oportuna-mente por la vía sumaria de aquellos casos en que no existe controversia de hechos materiales. De esta manera, se descongestiona el calendario del tribunal al descartar aquellas reclamaciones cuya resolución no precisa de un juicio.
Este caso gira precisamente sobre la existencia o no de causa justificada para el despido del señor Zapata. Resul-taba imprescindible, por lo tanto, que este respondiera completa y cabalmente al interrogatorio interpuesto por el abogado de la parte contraria, el cual tenía una conexión directa con la controversia medular del caso. Como corola-rio a lo anterior, el recurrido estaba obligado a dar a cono-cer todos sus fundamentos para alegar violación de la Ley 80 en respuesta a preguntas directas e inequívocas a esos fines.
Concluimos que, para efectos de disponer de la solicitud de sentencia sumaria sometida por J.F. Montalvo, corresponde en este caso prescindir de la alegación propuesta por el recurrido de que se repartieron bonos de productividad en la empresa luego de su despido. El señor Zapata omitió esta información en sus respuestas durante la toma de su deposición y, posteriormente, no adelantó razón alguna para revelarla por vez primera en su respuesta a la moción de sentencia sumaria.(10)
*444 3. Ganancias
Aduce el recurrido como defensa adicional que J.F. Mon-talvo no estaba operando con un déficit presupuestario al momento de su despido. Sin embargo, el Art. 2 de la Ley 80, supra, no exige que se esté operando con pérdidas como requisito para su aplicación. Lo que sí requiere la disposi-ción aludida es una reducción significativa, ya sea en el volumen de producción, ventas o ganancias del negocio a tal grado que pueda verse afectada la continuidad de las operaciones de la empresa.
Conforme a la evidencia sometida no controvertida, en-tre el 2008 y 2009 el ingreso neto de J.F. Montalvo disminuyó de $3,267,705 a $794,787, es decir, alrededor de un 76% por ciento. En el contexto de este caso no vemos cómo una pérdida económica tan significativa, atada a su vez a la disminución en ventas de la empresa, no cae en la defi-nición de “justa causa” esbozada en dicha disposición. Es precisamente este tipo de situación la que se contempla como constitutiva de justa causa eximente del pago de mesada.
De otra parte, conforme a los hechos no controvertidos consignados por la parte peticionaria, el señor Zapata re-conoció que su posición como coordinador y ayudante del presidente era importante y le permitía acceso a los esta-dos financieros de J.F. Montalvo. Igualmente, admitió que para la fecha de su despido la empresa estaba reflejando una reducción en el volumen del negocio y que durante el 2010 le informó al entonces presidente de la Compañía que era necesario tomar medidas porque se estaba perdiendo dinero.
Concluimos, por lo tanto, que esta alegación no es impedimento para que se concediera la sentencia sumaria solicitada.
*445 4. Señor Arroyo como sustituto del recurrido
Alega el recurrido que J.F. Montalvo contrató los servi-cios del señor Arroyo para que realizara sus funciones como Coordinador y Ayudante del Presidente mientras la-boró en la empresa. El foro primario descartó esta aseve-ración utilizando como fundamento la admisión del señor Zapata durante su deposición, a los efectos de que desco-nocía si se había contratado a un sustituto para ocupar su antigua posición en la empresa. Asimismo, el juez de ins-tancia apuntó a la declaración jurada de la Directora de Recursos Humanos de J.F. Montalvo quien expresamente confirmó que no se empleó a persona alguna para realizar las funciones del recurrido. Coincidimos con la apreciación del tribunal de instancia en este respecto.(11)
Ya anteriormente explicamos que queda a discreción del tribunal primario excluir alegaciones cuando se incumple con los rigores de la Regla 36.3 de Procedimiento Civil de 2009, supra, como en efecto sucedió en este caso. Precisa-mente, el juez de instancia así lo reconoció en su sentencia al indicar que tomaba por bueno los hechos identificados por J.F. Montalvo por no haberse refutado éstos conforme indica dicho precepto procesal.
Por lo tanto, damos por admitido lo consignado en el párrafo número doce de los hechos materiales que no están en controversia según propuestos por la parte peticionaria, a los efectos de que no se contrató a otra persona *446 para realizar las labores del señor Zapata en su puesto como coordinador y ayudante del Presidente.(12)
5. Empleados contratados
Por último, el recurrido expone que luego de su despido la empresa contrató a otros empleados. Pretende de este modo cuestionar las razones de índole económica y de re-organización que adelantó J.F. Montalvo como justificación para cesantearlo.(13) Acorde con la deposición del señor Zapata, según indicáramos, se trata de 3 empleados destina-dos a ocupar los puestos siguientes: contralor, auditor in-terno y director de seguridad.
Surge de la evidencia no controvertida que el recurrido laboró para J.F. Montalvo hasta diciembre de 2010. Para esa fecha el señor Zapata fue cesanteado conjuntamente con otros cinco empleados como parte de un proceso de re-organización efectuado por la empresa.
*447 La reducción en empleomanía respondió a una merma significativa en los ingresos de la compañía, cónsona con el Art. 2(f) de la Ley 80, supra, situación que le era conocida al recurrido. A esos efectos, este admitió haberle informado al Presidente de J.F. Montalvo durante el 2010 que era preciso tomar medidas porque se estaba perdiendo dinero. Además, no se reclutó a otro empleado para la plaza que el señor Zapata ocupó ni se contrató personal nuevo para ejercer sus funciones.
Dadas las circunstancias presentes en este caso, resolvemos que la contratación de las tres personas mencionadas destinadas a ocupar los puestos de contralor, auditor interno y director de seguridad no se encuentra necesariamente reñida con el concepto justa causa en la vertiente que nos ocupa. Opinamos que, según este escenario fáctico, la Ley 80 le otorga a la empresa cierto grado de flexibilidad para buscar alternativas frente al decrecimiento vertiginoso en el ritmo de sus ventas y ganancias. Ciertamente no es función de los tribunales administrar los negocios ni aconsejar a los directores de estos cómo manejar los asuntos de su empresa cuando enfrentan retos económicos serios como en el caso que nos ocupa.(14) Nues- *448 tro rol se limita a asegurar que se cumpla con lo dispuesto en la ley, que sin duda permite una reorganización empre-sarial con nuevo personal para ejercer aquellas funciones que se tornen relevantes a la luz de las circunstancias im-perantes en un momento determinado.
Por lo tanto, es forzoso concluir que, lejos de ser un ca-pricho infundado de su patrono, la cesantía del recurrido formó parte de una reorganización empresarial dirigida a atender la pérdida de ingresos como resultado de la reduc-ción en el volumen de negocios que enfrentaba esa entidad para el momento de su despido. Es decir, el concepto justa causa está atado a consideraciones que atañen al manejo de la empresa. En vista de ello, la decisión de despedir al señor Zapata se encuentra claramente cobijada dentro de las modalidades de justa causa provistas en el Art. 2(e) y (f) de la Ley 80, supra. El señor Zapata, por otro lado, no logró rebatir apropiadamente los hechos materiales que no están en controversia según sustentados por la peticionaria. Nada impide disponer de reclamaciones laborales me-diante el mecanismo de sentencia sumaria cuando se con-figuran las exigencias consignadas en nuestro ordena-miento procesal civil tal y como sucede en este caso. Ramos Pérez v. Univisión, supra. Por consiguiente, erró el Tribunal de Apelaciones al resolver que existían controversias de hechos materiales que impedían disponer de la solicitud de sentencia sumaria a favor del promovente y revocar la determinación del Tribunal de Primera Instancia. El foro primario no abusó de su discreción.
V
Por lo indicado, se revoca la sentencia del Tribunal de Apelaciones de 29 de noviembre de 2011.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta disintió con una *449 opinión escrita. El Juez Asociado Señor Estrella Martínez disintió con una opinión escrita, a la que se unieron el Juez Presidente Señor Hernández Denton y la Juez Asociada Señora Rodríguez Rodríguez.

 29 LPRA. secs. 185a-185m.

 Igualmente, desestimó la reclamación de la Sociedad Legal de Bienes Ganan-ciales, así como la de la esposa del recurrido por no estar fundamentada de acuerdo con la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA secs. 185a-185m (Ley 80).

 La Juez de Apelaciones, Hon. María del Carmen Gómez Córdova, disintió de ese proceder sin opinión escrita.

 Art. 1 de la Ley 80 (29 LPRA sec. 185a). La mesada consiste en una indemnización progresiva calculada a base de los años de servicio del empleado cesanteado.

 S. Baicker-McKee, W.M. Janssen y J.B. Corr, Federal Civil Rules Handbook, St. Paul, ThomsonWest, 2011. Véase, además, J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. JTS, T. III, 2011, pág. 1038.

 Véase, 11 Moore’s Federal Practice 3d Secs. 56.70[5][b] y [c], págs. 56-149 a 56-152.1 y Secs. 56.81[3][a] y [b], págs. 56-182 a 56-185. Véase, además, 5 Federal Local Court Rules 3d págs. 17-18 (2009).

 En lo pertinente, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, dis-pone lo siguiente:
“(a) La moción de sentencia sumaria será notificada a la parte contraria y de-berá contener lo siguiente:
“(4) una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal].]
“(b) La contestación a la moción de sentencia sumaria [...] deberá contener lo siguiente:
“(2) una relación concisa y organizada, con una referencia a los párrafos enu-merados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se estable-cen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
“(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal].]
“(c) Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obli-gada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede.
“(d) Toda relación de hechos expuesta en la moción de sentencia sumaria o en su contestación podrá considerarse admitida si se indican los párrafos o las páginas de las declaraciones juradas o de otra prueba admisible en evidencia donde ésta se establece, a menos que esté debidamente controvertida conforme lo dispone esta regla.
*432 “Elk tribunal no tendrá la obligación de considerar aquellos hechos que no han sido específicamente enumerados y que no tienen una referencia a los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen. Tampoco tendrá la obligación de considerar cualquier parte de una de-claración jurada o de otra prueba admisible en evidencia a la cual no se haya hecho referencia en una relación de hechos

 Notamos que ambas partes cumplieron con el requisito de identificar la evi-dencia que sirvió de base a los hechos consignados en sus mociones.

 Así lo reconocimos recientemente en SLG Valencia v. García García, 187 DPR 283 (2012), al citar con aprobación las siguientes expresiones contenidas en J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., Pubs. JTS, 2011, T. III, pág. 835:
“[...] ‘Un amplio y liberal descubrimiento de prueba es la médula del esfuerzo de destruir de una vez y para siempre la deportiva teoría de justicia que tanto mina la fe del pueblo en el sistema judicial’. [...] Las reglas que encaminan el descubrimiento de prueba procuran ‘que el juicio sea menos un juego de la gallinita ciega y más una contienda justa en que los hechos sean descubiertos en la más amplia extensión *443 posible. La justicia no es un juego, ni un deporte, sino una empresa formal a ser conducida seriamente’ [...]”. Véanse, además: ELA v. Casta, 162 DPR 1, 9 (2004); General Electric v. Concessionaires, Inc., 118 DPR 32, 38 (1986).

 No obstante, aprovechamos esta oportunidad para aclarar que el mero he-cho de que un patrono, que se ve obligado a despedir empleados como parte de una reorganización de su empresa por razones económicas, decida incentivar a quienes permanecen laborando, utilizando los ahorros producto de tal reorganización, no necesariamente contraviene las disposiciones de la Ley 80. Y es que, al reducirse la plantilla laboral, los empleados restantes de ordinario tendrán que asumir funciones adicionales a su cargo para mantener la empresa a flote. Igualmente, se les exigirá un mayor desempeño o asumir mayores responsabilidades para superar situaciones de crisis, en gestiones dirigidas a la viabilidad de los negocios. Véanse: Díaz v. Wyndham Hotel Corp., 155 DPR 364, 376 (2001); Guía revisada para la interpretación y aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, Departa- *444 mentó del Trabajo y Recursos Humanos de Puerto Rico, 21 de septiembre de 2000, pág. 44; C. Zeno Santiago, El despido y la política social en nuestro estado de derecho, 34 Rev. Jur. UIPR 213, 224 (2000).

 Notamos que, aunque la relación de hechos propuesta por el señor Zapata, según el renglón 5, resulta directamente contraria a la formulación 12 según some-tida por J.F. Montalvo en su Solicitud de Sentencia Sumaria, esta última no fue controvertida acatando el procedimiento exigido por la Regla 36.3 de Procedimiento Civil de 2009, supra, ya que, en su contestación, el recurrido no hizo referencia expresa al número específico del párrafo que intentaba rebatir. En vista de ello, el tribunal primario no estaba obligado a considerar los hechos planteados por el recu-rrido bajo el inciso (5).

 Una vez despedido un empleado por razones económicas o empresariales, según provisto en el Art. 2 de la Ley 80 (29 LPRA sec. 185b), el hecho de que sus funciones se le asignen a otros empleados no equivale a una sustitución en el empleo. Una reorganización empresarial forjada como vehículo para impulsar económica-mente un negocio y sacarlo de la situación precaria en la que se encuentra puede válidamente conllevar la eliminación de puestos para reducir costos y a la vez la redistribución de esas funciones entre uno o varios de los empleados restantes.
Igualmente, en el ámbito federal se ha reconocido que, en los casos de alegado discrimen imputado a una reducción laboral, o “reduction in force”, no se entiende remplazada una persona despedida por el mero hecho de que sus labores se distri-buyan entre otros empleados laborando para la empresa. A esos efectos, se ha indi-cado lo siguiente:
“[...] ‘[A] person is not replaced when another employee is assigned to perform the plaintiff’s duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff’s duties’ [...]”. Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 265 (6to Cir. 2010), citando a Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6to Cir. 1990). Véase, además, Geiger v. Tower Auto, 597 F.3d 614, 623 (6to Cir. 2009).

 Advertimos que en ningún momento el recurrido ha alegado tener algún derecho prioritario sobre otros empleados que fueron retenidos por J.F. Montalvo a base del criterio de antigüedad provisto en el Art. 3 de la Ley 80 (29 LPRA sec. 185c). Tampoco planteó en el recurso de epígrafe tener derecho a la reposición consignada en ese artículo y que, por ende, se menoscabó su derecho de preferencia cuando la empresa reclutó personal para los puestos de contralor, auditor interno y director de seguridad.

 De igual manera se han expresado los tribunales federales al atender casos de despido de empleados por razones discriminatorias donde están de por medio decisiones empresariales. En esas situaciones se le ha concedido a los patronos un amplio margen de discreción en aquellos asuntos atinentes al manejo de sus negocios. Según señalado por la jurisprudencia, no corresponde a los tribunales ac-tuar como un súper departamento de recursos humanos y verificar la sensatez de las explicaciones propuestas como defensa:
“Title VII does not require the employer’s needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class. We do not sit as a “super-personnel department,” and it is not our role to second-guess the wisdom of an employer’s business decisions —indeed the wisdom of them is irrelevant— as long as those decisions were not made with a discriminatory motive [...] That is true no matter how medieval a firm’s practices, no matter how high-handed its decisional process, no matter how mistaken the firm’s managers [...]”. (Citas y comillas omitidas). Álvarez v. Royal Atl. Developers, Inc., 610 F.3d 1263, 1266 (11mo Cir. 2010). Véanse, además: Kasten v. Saint-Gobain Performance Plastics Corp., 703 F.3d 966 (7mo Cir. 2012); Espinal v. Nat’l Grid NE Holdings 2, LLC, 693 F.3d 31 (1er Cir. 2012); Apsley v. Boeing Co., 691 F.3d 1184 (10mo Cir. 2012); Magnus v. St. Mark United Methodist Church, 688 F.3d 331 (7mo Cir. 2012); Lee v. The City of Columbus, 636 F.3d 245 (6to Cir.2011); Melendez v. Autogermana, Inc., 622 F.3d 46 (1er Cir. 2010).