**YOUNGEVITY INTERNATIONAL, CORP., et al., Plaintiffs,**

v.

**Todd SMITH, et al., Defendants.**

**Case No.: 3:16–cv–00704–L–JLB**

United States District Court, S.D. California.

Signed 12/01/2016

Eric Jordan Awerbuch, Peter A. Arhangelsky, Emord and Associates PC, Gilbert, AZ, Jonathan W. Emord, Emord and Associates, Clifton, VA, for Plaintiffs.

Cynthia Love, Jonathan R. Schofield, Michael S. Anderson, Jonathan O. Hafen, Parr Brown Gee & Loveless, Salt Lake City, UT, Kyle M. Van Dyke, Hurst & Hurst, San Diego, CA, for Defendants.

**ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION [Doc. 48] AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [Doc. 50]**

Hon. M. James Lorenz, United States District Judge

Pending before the Court is Plaintiffs' Motion for a preliminary injunction and

Defendants' Motion to dismiss. The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1 (d)(1). For the reasons stated below, the Court **GRANTS** Plaintiffs' Motion for a preliminary injunction and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to dismiss.

## I. Background

This dispute arises out of a broken business relationship between Plaintiffs and several individuals and corporations who used to do business with them. Plaintiffs are Youngevity International Corporation ("Youngevity") and Dr. Joel D. Wallach ("Wallach"). Youngevity is a publically traded company founded by Wallach that engages in the business of selling various health supplements. Youngevity uses independent, direct sellers known as "distributors" to move its product. The individual defendants in this action are former Youngevity distributors and / or employees. Defendants Wakaya Perfection Inc. ("Wakaya") and Total Nutrition Inc. ("TNT") are companies, formed by some of the individual defendants, which are now in competition with Youngevity. For about seventeen years, Defendant TNT has run various Websites[1] as well as a 1–800 Number[2] that explicitly use Plaintiffs' likenesses. Plaintiffs sent Defendants a letter dated March 21, 2016 that terminated the parties' business relationship and demanded cessation of Plaintiffs' use of Defendants' likenesses. However, Defendants' uses of Plaintiffs' likenesses continues.

On July 13, 2016, Plaintiffs filed a Second Amended Complaint against Defendants'. (SAC [Doc. 47].) It alleges (1) false or misleading advertising in violation of the Lanham Act, 15 U.S.C. § 1125; (2) false advertising in violation of California Business and Professions Code §§ 17500 et seq.; (3) unfair completion in violation of California Business and Professions Code § 17200 ("the UCL"); (4) intentional interference with prospective economic advantage; (5) breach of contract; (6) intentional interference with contract; (7) misappropriation of trade secrets in violation of California Civil Code § 3426; (8) misappropriation of likeness in violation of California Civil Code § 3344; (9) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; and (10) breach of fiduciary duty. (See SAC.) Plaintiffs now move for a preliminary injunction enjoining Defendants' continued use of their likenesses. (See MPI [Doc. 48].) Defendants now move to dismiss various of the claims against it. (See MTD [Doc. 50].) Each side opposes the other's motion. (See Opp'ns [Docs. 51, 56].)

## II. Motion for Preliminary Injunction

 Plaintiffs seek a preliminary injunction requiring Defendants to cease using the 1–800 Number and to take down the Websites. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). This analysis involves a sliding scale such that "a stronger showing on one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The most important variable however is the likelihood of success on the merits. *Garcia v. Google, Inc.*,

---

**1.** www.myyoungevity.com; www. wallachonline.com

**2.** 1–800–WALLACH (9855225)

786 F.3d 733, 740 (9th Cir. 2015). Further, where, as here[3], the injunctive relief sought is mandatory in nature, a court should decline the request unless the party seeking the relief demonstrates that the law and facts "clearly favor" their position. *Id.*

■ To recover on a misappropriation of likeness claim, a plaintiff must prove "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1138 (9th Cir. 2006); Cal. Civ. Code § 3344. The present dispute turns in main part on the consent element. Consent can be express or implied. *See Newton v. Thomason*, 22 F.3d 1455, 1461 (9th Cir. 1994). Up until March of 2016, Defendants had implied consent to use Plaintiffs' likenesses. (See SAC ¶ 290;. Graham Decl. [Doc. 51–1] ¶¶ 19, 20; [Doc. 53] 3:24–27.) Via a letter dated March 21, 2016, Plaintiffs claim they terminated consent to Defendants' use of Plaintiffs' likenesses. (Termination Letter [Doc. 47–1 Ex. C Attach. 4].). Defendants claim that the single publication rule, Cal. Civ. Code § 3425.3, prohibits Plaintiffs from terminating consent to Defendants' use of their likeness so long as Defendants' use remains consistent.

■ A claim for misappropriation of likeness is subject to a two year statute of limitations period. *Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012). Defendants' uses of Plaintiffs likeness began more than two years ago. Under the single publication rule, a statement is generally considered published, and therefore the statute of limitations period generally be-

gins to run, upon the first publication of the communication. *Id.* at 1082. The statute of limitations, however, resets with any republications. *Id.* In the context of websites, republication does not occur so long as the statement is not substantively altered or directed to a new audience. *Id.* Defendants contend that there has been no republication of its use of .Plaintiffs' likenesses in the two years preceding Plaintiffs' Complaint. Defendants therefore assert that the statute of limitations has ran upon the misappropriation of likeness claim.

■ The Court disagrees. The main problem with Defendants' position is that it would start the statute of limitations clock before all the elements of a claim accrue. This is improper. *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal.4th 809, 815, 107 Cal.Rptr.2d 369, 23 P.3d 601 (a cause of action accrues "upon the occurrence of the last element essential to the cause of action."). Indeed, Defendants' position would require a plaintiff to bring a claim before having a legal basis to do so. It would also would categorically deny a plaintiff the right to terminate consent to the continued but unchanged use of a plaintiff's likeness after two years. Defendants cite no authority to support this position and the Court is unaware of any. Accordingly, because the Plaintiffs brought their complaint within one month of its accrual, the Court finds that neither the two year statute of limitations nor the doctrine of laches is a bar to their claim. The lack of consent element is satisfied.

So too are the remaining elements of a misappropriation of likeness claim. There is no dispute that Defendants have (1)

---

**3.** It is proper to characterize this type of injunction as mandatory because compliance would (1) require the performance of an act (taking down the websites) and (2) alter the current status quo. *See Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1060–61 (9th Cir. 2014).

used Plaintiffs' likeness for (2) commercial advantage. Further, for the reasons discussed below under the irreparable injury factor of the injunctive relief analysis, the injury element is met too. For these reasons, the Court finds that the law and the facts clearly favor Plaintiffs' on the eighth cause of action.[4]

■ The remaining factors also favor preliminary injunctive relief. Through various public outreach efforts, Dr. Wallach has worked to generate a degree of goodwill and demand that attaches to his and Youngevity's name. These efforts thus lead consumers and potential consumers to search out these names and purchase Youngevity products. It is undisputed that the Websites at issue here are amongst the first results returned by search engines in response to queries about "Youngevity" or "Dr. Wallach". Plaintiffs assert Defendants' are using this search engine optimization to siphon off to their competing venture customers intent on buying Youngevity products.

In support of this contention, Plaintiffs' present undisputed declaration testimony that, through the use of the Websites, Defendants (1) obtain the names, mailing addresses, email addresses, phone numbers, and credit card numbers of customer's intent on purchasing Youngevity products (Steve Wallach Decl. [Doc. 47–1 Ex. C] ¶ 10) and (2) advertise a website (www.yteamtools.com) that markets Defendants' products and falsely suggests some of these products are produced and/or endorsed by Plaintiffs (Awerbuch Decl. [Doc. 48–2 Ex. A] ¶¶ 8, 11–12; SAC ¶ 322). A competitor's access to a company's confidential customer information can clearly cause very serious damage to a company's market share and business goodwill that is impossible to measure and compensate via money damages. *See Rent–A–Center, Inc., v. Canyon Television Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Furthermore, Defendants have not offered any persuasive reason as to why they should be allowed to continue misappropriating Plaintiffs' likenesses. Defendants' are no longer licensed Youngevity distributors. Since March of 2016 Defendants have not been permitted to purchase for sale Plaintiffs' products. Though the relationship between the parties does appear to permit Defendants to sell off any existing stock of Plaintiffs' product, Plaintiffs right to safeguard its reputation and goodwill through control of their likenesses simply trumps Defendants' desire to use the search engine optimal websites and 1–800 number to quickly move any residual product. Accordingly, the Court finds that the balance of equities and public interest also favor injunctive relief. The Court therefore **GRANTS** Plaintiffs' Motion for a Preliminary Injunction. Defendants are hereby ordered to cease making commercial use of the likenesses of Plaintiffs Youngevity and Joel D. Wallach. Defendants are further ordered to cease operation of 1–800–WALLACH and websites www.myyoungevity.com and www.wallachonline.com. Defendants shall achieve full compliance with this order within one week of its entry.

### III. MOTION TO DISMISS

#### A. Legal Standard

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.

---

**4.** Having found the eighth cause of action sufficient to sustain Plaintiffs' request for a preliminary injunction, the Court need not consider whether the ninth cause of action constitutes an independent basis upon which to grant Plaintiffs' requested injunctive relief.

*See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. *Id.* The court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court has explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (internal citations and quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, courts may consider documents specifically identified in the complaint whose authenticity is not questioned by the parties. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other grounds). Moreover, courts may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* The court may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

### Count 1

▆▆▆▆ Defendants argue that Count 1, alleging false advertising in violation of the Lanham Act, falls short of the particularity in pleading required by Federal Rules of Civil Procedure 8 and 9(b). To recover on a Lanham Act claim, a plaintiff must prove, *inter alia*, that the defendant made a false statement of fact in a commercial setting. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Where, as here, a Lanham Act false advertising claim is grounded in fraud, Rule 9(b) applies. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–05 (9th Cir. 2003). Rule 9(b) requires a plaintiff to state "the who, what, where, when, and how of the misconduct charged." *Id.* at 1106 (internal citations and quotation marks omitted). It also requires that the plaintiff identify "what is false or misleading about an advertisement, and why it is false." *Id.* at 1106 (internal citations and quotation marks omitted).

Plaintiffs parse Count one into multiple sub-counts. All of the sub-counts fail to explain with any degree of particularity what false statements were allegedly made by Defendant Smith specifically. Accordingly, the Court **GRANTS**, with leave to amend [5], Defendants' Motion with respect to Count 1 as to Smith.

▆▆▆ In Count 1A, Plaintiffs allege Wakaya made false statements regarding how

---

[5]. If Plaintiffs choose to file an amended complaint, they are advised to clearly and concisely state the who, what, where, when, and how of any specific statements allegedly made by a particular defendant. Failure to do so will result in dismissal with prejudice. This caution applies to all claims dismissed without prejudice by this order.

much money a Wakaya distributor could potentially earn. Defendants argue that Count 1A fails to identify any false statements allegedly made by Wakaya. The Court disagrees. Plaintiffs allege that "Wakaya agents promised that 'a year from now, many of us will be million dollar earners.'" (SAC ¶ 32.) Plaintiffs allege this statement is false or misleading because no Wakaya distributor has ever earned this amount of money. (SAC ¶ 41.) Further, Plaintiffs accompany this allegation with a link to a YouTube video that allegedly contained [6] this statement. (SAC ¶ 32 n.1.) Defendants contend that Plaintiffs have failed to establish that this video was in fact posted by a Wakaya agent. However, at the pleading stage, Plaintiffs need not establish an agency relationship. Rather, the Court accepts as true the allegation that the video was posted by Wakaya agents. *See N. Star Int'l*, 720 F.2d at 581. Accordingly, by providing this URL, Plaintiffs have adequately given Defendants' notice of the particular misconduct alleged. The Court therefore **DENIES** Defendants' Motion to Dismiss Count 1A as to Wakaya.

In Count 1B, Plaintiffs allege Wakaya falsely stated it was a joint venture with billionaire David Gilmour, founder of the Fiji Water Company. As with Count 1A, Defendants support this claim with citation to a URL that allegedly contained a YouTube video in which a Wakaya agent stated that Gilmore is "backing everything" related to Wakaya. (SAC ¶ 51.) Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Count 1B as to Wakaya.

In Counts 1C and 1D, Plaintiffs allege Wakaya falsely advertised that (1) Youngevity was having financial problems and (2) Wakaya products originate from Fiji. However, Plaintiffs fail to allege any details regarding "where" and "when" Wakaya allegedly made these false statements.

Accordingly, the Court finds that Counts 1C and 1D fail to satisfy Rule 9(b) and **GRANTS**, with leave to amend, Defendants' Motion to dismiss them.

 In Count 1E, Plaintiffs allege Wakaya's advertisements of the health benefits of its "pure Calcium Bentonite Clay" line of products is false or has a tendency to mislead because these products contains high dosages of lead. According to the FDA, high lead dosage products can cause serious damages to the central nervous system, kidneys, and immune system. (SAC ¶¶ 86, 87.) Defendants argue that Count 1E fails because the Facebook Posting (Awerbuch Decl. [Doc. 47–1] Ex. A Attach. 2] ) referenced by Plaintiffs is not technically false. The argument seems to be that, even if high lead dosages are present in the clay products, the Facebook Posting is neither false nor has a tendency to mislead because it does not specifically disclaim lead related health hazards. The Court disagrees. Read as a whole, the Facebook Posting tends to suggest that the clay products are overall good for a person's health. If, as Plaintiffs allege, the products do in fact contain high levels of lead, this would be false. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Count 1E.

 In Count 1F, Plaintiffs allege Wakaya advertises that its distributors can earn large amounts of money and enjoy luxury lifestyles. Plaintiffs allege such advertising is false because Wakaya is actually an open distribution pyramid scheme and participants in such schemes are extremely unlikely to receive any meaningful income from their distribution efforts. This claim does not survive Rule 9(b). Assuming for sake of argument that Wakaya distributors in fact cannot earn meaningful in-

---

**6.** The video is no longer posted on the YouTube website.

comes from participation in the alleged pyramid scheme, the fact remains that Plaintiffs have not identified with particularity any Wakaya advertisement claiming Wakaya distributors are likely to earn a meaningful income. Accordingly, the Court **GRANTS**, with leave to amend, Defendants' Motion to Dismiss Count 1F.

### Counts 2 and 3

Defendants contend that Plaintiffs lack standing to bring Counts 2 (alleging false advertising in violation of the FAL) and 3 (alleging various violations of the UCL). After the passage of Proposition 64, a private plaintiff has standing to bring FAL or fraud based UCL claims only if they have suffered injury in fact by losing money or property as a result of the alleged misconduct. *Kwikset v. Superior Court*, 51 Cal.4th 310, 320–21, 120 Cal. Rptr.3d 741, 246 P.3d 877 (2011). Thus, these claims require (1) injury and (2) causation. *Id.* at 322, 120 Cal.Rptr.3d 741, 246 P.3d 877. Resolution of Defendants' false advertising claims turns on the causation element. In the context of misrepresentations to consumers, it is met only if plaintiff itself can show actual reliance upon the alleged misrepresentations. *Id.* at 888, 107 Cal.Rptr.2d 369, 23 P.3d 601.

Here, Plaintiffs claim that actual or potential Youngevity distributors relied upon Defendants' alleged misrepresentations and therefore decided to become Wakaya distributors instead of Youngevity distributors. Plaintiffs do not allege to have personally relied upon any misstatements. Rather, Plaintiffs argue that in the context of false advertising claims between competitors, it is sufficient that consumers relied upon the misrepresentations and were thus induced to purchase the compet-

ing product instead. No California courts have explicitly considered whether third party reliance is sufficient to sustain a false advertising claim between competitors. *See L.A. Taxi Cooperative, Inc., v. Uber Technologies, Inc.*, 114 F.Supp.3d 852, 866 (2015). However, some federal courts have. Though a few have found third party reliance sufficient, most have found that a plaintiff must allege that they personally relied upon the misstatement. *Id.* at 866–67 (collecting cases). This Court adopts the majority approach. Accordingly, the Court **GRANTS**, with leave to amend, Defendants' Motion to Dismiss Count 2 and Count 3C. However, the *Kwikset* analysis is inapplicable to Counts 3A and 3B because they are not grounded in a misrepresentation theory. Rather, they appear grounded in the "unlawful" prong of the UCL. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as to Counts 3A and 3B.

### Counts 4B and 6A

Defendants seek dismissal of Counts 4B and 6A (alleging interference with economic advantage / contract) on the theory that they are based on invalid non-solicitation agreements. California Business and Professions Code § 16600 provides that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Section E12 of Youngevity's Policies and Procedures forbids current Youngevity distributors from engaging in cross recruiting [7]. (Policies and Procedures [Doc. 47–1 Ex. C Attach. 1] § E12.) Defendants contend this provision is invalid under § 16600 because Defendants interpret § 16600 as categorically voiding any condi-

---

**7.** Cross recruiting refers to the practice of a current distributor exploiting his or her connections within a multi-level marketing com-

pany to recruit other active distributors from that company to join a competing company.

tion that can have the effect of limiting one's opportunity to engage in a lawful business.

▉ Defendants reading of § 16600 is overbroad. The California Court of Appeal has stated that § 16600 does not apply to restrictions on a person's ability to engage in a lawful business while that person is employed by the company to which he or she promised loyalty. *Angelica Textile Servs., Inc. v. Park,* 220 Cal.App.4th 495, 509, 163 Cal.Rptr.3d 192 (2013). Rather, § 16600 targets restrictions on *post*-employment activity. *Id.*

▉ Defendants argue that § E12 is nevertheless invalid under § 16600 because Youngevity distributors are independent contractors rather than employees. However, Youngevity does not cite to any authority that supports this proposition. Nor does the Court believe it is proper to make such a distinction. Unlike a restraint that operates for a fixed period of time after a business relationship expires, an employee or independent contractor can escape a covenant that would limit their ability to earn a living by simply ceasing the business relationship with the party to whom such a covenant runs. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Counts 4B and 6A.

### Count 5C

Count 5C alleges that Defendant Dave Pitcock ("Pitcock") breached the Consulting Agreement [Doc. 47–1 Ex. G] executed between Youngevity and Livinity by making disparaging comments about Youngevity. This allegation is problematic however in that Pitcock clearly and unambiguously signed the Consulting Agreement as an agent of Livinity rather than in his individual capacity. *Lippert v. Bailey,* 241 Cal. App.2d 376, 382, 50 Cal.Rptr. 478 (1966) ("Where the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent.").

▉ In their Opposition, Plaintiffs present two arguments as to why Count 5C should survive notwithstanding the fact that Pitcock is not a signatory. First, Plaintiffs argue that the parties clearly intended the Consulting Agreement to bind Pitcock individually because its non-disparagement provision is meaningless if it does not. The problem with this argument is that this is a fully integrated contract, (See Consulting Agreement § 15) (containing an explicit integration clause), and there is no ambiguity as to the fact that Pitcock signed as an agent of Livinity—the principal bound by the Consulting Agreement. Accordingly, the Court finds the parties did not intend to personally bind Pitcock. See Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful".).

Next, Plaintiffs argue Pitcock can nevertheless be held liable under an alter ego theory. However, if Plaintiffs seek recovery against an agent of the principal contracting party for breach of contract under an alter ego theory, it is their burden to plead as much. *See Wehlage v. EmpRes Healthcare, Inc.,* 791 F.Supp.2d 774, 782 (N.D. Cal. 2011) (quoting *Sonora Diamond Corp. v. Superior Court,* 83 Cal. App. 4th 523, 526 (2000)). Plaintiffs have not done so. Accordingly, the Court **GRANTS**, with leave to amend, Defendants Motion to Dismiss Count 5C.

### Counts 5D and 6B

▉ Count 5D alleges Defendants' Patti Gardner ("Gardner") and Brytt Cloward ("Cloward") breached a contract ("HM Agreement [Doc. 47–1 Ex. H]") executed between Youngevity and Heritage Makers,

Inc. by violating its Confidentiality [§ 11.1] and Non–Competition [§ 11.2] clauses. Defendant Gardner argues she could not have breached the HM Agreement because she did not sign it in her individual capacity and therefore is not bound by it. As explained above, "[w]here the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent." *Lippert,* 241 Cal. App.2d at 382, 50 Cal.Rptr. 478. Gardner clearly signed the HM agreement not in her individual capacity but as President of Heritage Makers. (See HM Agreement p. 297.) Plaintiffs argue that, although Gardner signed only as an agent of Heritage Makers, the parties intended that Gardner be personally bound by the HM agreement. The Court finds this argument unpersuasive for the same reasons articulated as to Pitcock under Count 5C above and therefore **GRANTS WITH PREJUDICE** Defendants' Motion to dismiss as to Count 5D with respect to Gardner.

 Cloward, by contrast, signed the HM Agreement not as an agent of Heritage Makers but as a "Representing Party." (HM Agreement p. 299.) Cloward argues that Plaintiffs have failed to state a claim against him for breach of the Non–Competition Clause because, as a Representing Party, that clause merely requires him to abide by any confidentiality and/or non-competition provisions that may be provided for in his employment agreement. Plaintiffs have not alleged that Cloward violated any such provisions of an employment agreement. Rather, Plaintiffs again argue that, though the Non–Competition Clause, on its face, applies independently[8] only to HM, the parties really intended that it also apply independently to Cloward as an individual. Plaintiffs' interpre-

tation is unpersuasive because it conflicts with the unambiguous language of the Non–Competition Clause, which independently binds only HM. Accordingly, the Court **GRANTS WITH PREJUDICE** Defendants' Motion to Dismiss Count 5D with respect to Cloward as to breach of the Non–Competition Clause. Because Plaintiffs have already had two opportunities to successfully amend this claim, this dismissal is with prejudice.

Cloward also argues that Plaintiffs have failed to state a claim against him for breach of the Confidentiality Clause. There is no dispute as to the fact that the Confidentiality Clause applies to Cloward as a Representing Party. The Confidentiality Clause prohibits the use of information, such as customer lists regarding assets acquired by Youngevity from HM for the benefit of a signatory or anyone else. Plaintiffs allege that Cloward breached this agreement by providing Youngevity customer lists to Wakaya for Wakaya's benefits. Defendants respond that, even if such an allegation was true, it would not trigger the Confidentiality Clause because Plaintiffs have failed to allege that any customer lists provided by Cloward to Wakaya included information regarding assets acquired from HM.

The Court does not find this argument persuasive. For purposes of this Fed. R. 12(b)(6) motion, the Court finds it plausible that the Youngevity customer lists Cloward allegedly provided to Wakaya included information regarding customer lists transferred from HM to Youngevity. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Count 5D with respect to Cloward as to the Confidentiality Clause.

---

**8.** "Independently" as in without reference to any other contracts, such as Cloward's em-

ployment agreement.

Count 6B alleges Wakaya and Andreoli intentionally interfered with Youngevity's employment contract by inducing Cloward and Gardner to violate the Non–Competition Clause. Having found that Cloward and Gardner are not bound by the Non–Competition clause, it follows that Wakaya and Andreoli could not have induced them to violate it. Accordingly, the Court **GRANTS WITH PREJUDICE** Defendants' Motion to dismiss Count 6B.

### Count 8

For the reasons stated in Section II above, the Court **DENIES** Defendants' Motion to Dismiss Count 8.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for a Preliminary Injunction [Doc. 48–1] and **GRANTS IN PART** and **DENIES IN PART** Defendants Motion to Dismiss as follows:

- Defendants are hereby ordered to cease making commercial use of the likenesses of Plaintiffs Youngevity and Joel D. Wallach. Defendants are further ordered to cease operation of 1–800–WALLACH and websites www.myyoungevity.com and www.wallachonline.com. Defendants shall achieve full compliance with this order within one week of its entry.

- Count 1 is dismissed without prejudice as to Smith. Counts 1C, 1D, and 1F are dismissed without prejudice as to Wakaya.

- Count 2 is dismissed without prejudice.

- Count 3C is dismissed without prejudice.

- Count 5C is dismissed without prejudice. Count 5D as to Defendant Gardner is dismissed with prejudice. Count 5D as to Defendant Cloward with respect to the Non–Competition

Clause only is dismissed with prejudice.

- Count 6B is dismissed with prejudice.

- All Counts not mentioned above survive Defendants' Motion to Dismiss.

- If Plaintiffs choose to file an amended complaint, they must do so within 21 days of the entry of this order.