**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHARLES E. YEAGER, aka Chuck;
GENERAL CHUCK YEAGER
FOUNDATION,
        *Plaintiffs-Appellants,*

    v.

CONNIE BOWLIN; ED BOWLIN;
AVIATION AUTOGRAPHS, a non-
incorporated Georgia business
entity; BOWLIN & ASSOCIATES, INC.,
        *Defendants-Appellees.*

No. 10-15297
DC No.
2:08 cv-0102 WBS

CHARLES E. YEAGER, aka Chuck;
GENERAL CHUCK YEAGER
FOUNDATION,
        *Plaintiffs-Appellants,*

    v.

CONNIE BOWLIN; ED BOWLIN;
AVIATION AUTOGRAPHS, a non-
incorporated Georgia business
entity; BOWLIN & ASSOCIATES, INC.,
        *Defendants-Appellees.*

No. 10-16503
DC No.
2:08 cv-0102 WBS

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Senior District Judge, Presiding

Argued and Submitted
October 12, 2011—San Francisco, California
Submission Vacated and Deferred October 13, 2011
Resubmitted July 30, 2012

10889

Filed September 10, 2012

Before: Betty B. Fletcher, Stephen Reinhardt, and
A. Wallace Tashima, Circuit Judges.

Opinion by Judge Tashima

## COUNSEL

Jon R. Williams, Boudreau Williams LLP, San Diego, California, for the plaintiffs-appellants.

Todd M. Noonan, Stevens, O'Connell & Jacobs LLP, Sacramento, California, for the defendants-appellees.

## OPINION

TASHIMA, Circuit Judge:

Plaintiffs, retired General Charles E. "Chuck" Yeager and his foundation, appeal the district court's order granting summary judgment to Defendants Ed and Connie Bowlin. Yeager contends that the district court should not have struck his declaration, which contains comprehensive details he did not remember at his deposition. He also contends that, under California's single-publication rule, the Bowlins "republished" statements about him on their website — and thereby restarted the statute of limitations — when they modified unrelated information on their website. We reject both arguments and affirm the district court.[1]

## I.  Background

Yeager is a recognized figure in aviation history. The Bowlins are retired commercial airline captains who became friends with Yeager in the 1980s. The Bowlins own Aviation Autographs, which sells aviation-related memorabilia, including items related to or signed by Yeager.

In 2008, Yeager brought eleven claims against the Bowlins, including violations of the federal Lanham Act, California's common law right to privacy and California's statutory right to publicity, Cal. Civ. Code § 3344. At his deposition in this action, Yeager did not recall answers to approximately two hundred questions, including questions on topics central to this action. Approximately three months later, on the same day that he filed his opposition to the Bowlins' motion for summary judgment, Yeager filed a declaration. The declaration contains many facts that Yeager could not remember at

---

[1]We address Yeager's remaining contentions and affirm the district court in a memorandum disposition filed concurrently with this opinion.

his deposition, even when he was shown exhibits in an attempt to refresh his recollection.

The district court held that Yeager's declaration was a sham and, for summary judgment purposes, disregarded it where it contained facts that Yeager could not remember at his deposition. The district court granted the Bowlins' motion for summary judgment on all claims. It held that Yeager's claims under California's common law right to privacy and California's statutory right to publicity, Cal. Civ. Code § 3344, were time-barred.

Yeager timely appealed.

## II.   Standards of Review

Questions of law decided on summary judgment are reviewed de novo. *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 776 (9th Cir. 2010). "We must determine, viewing the evidence in the light most favorable to [the non-movant], whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

We, apparently, have not yet decided the standard which governs our review of a district court's invocation of the sham affidavit rule. We have, however, implied that review is for abuse of discretion. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d. 989, 998 (9th Cir. 2009) (noting "two important limitations on a district court's discretion to invoke the sham affidavit rule"). Moreover, we review for abuse of discretion "[r]ulings regarding evidence made in the context of summary judgment . . . ." *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. (2005). We thus conclude that a district court's decision whether to apply the sham affidavit rule should be reviewed for abuse of discretion. Under that standard, we first "determine de novo whether the trial court iden-

tified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If it did we then "determine whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted).

### III.   Sham Declaration

Yeager argues that his declaration cannot be a sham because he did not declare facts which contradict facts he testified to at his deposition. We disagree.

**[1]** "'The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Van Asdale*, 577 F.3d at 998 (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). This sham affidavit rule prevents "a party who has been examined at length on deposition" from "rais-[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony," which "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy*, 952 F.2d at 266 (internal quotation marks omitted); *see also Van Asdale*, 577 F.3d at 998 (stating that some form of the sham affidavit rule is necessary to maintain the principle that summary judgment is an integral part of the federal rules). But the sham affidavit rule " 'should be applied with caution' " because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment. *Id.* (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993)), In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 998-99.

According to the district court, "the deponent remember-[ed] almost nothing about the events central to the case during his deposition, but suddenly recall[ed] those same events with perfect clarity in his declaration in opposition to summary judgment without any credible explanation as to how his recollection was refreshed." During his deposition, Yeager responded that he did not recall answers to approximately 185 different questions. For example, Yeager stated that he did not recall significant or difficult-to-forget events in the recent past, such as testifying in court or his involvement in a plane crash. In his declaration, Yeager provided no reason for his sudden ability to recall specific facts that he could not recall during his deposition other than stating that since his deposition he "reviewed several documents that have refreshed [his] recollection about some things [he] did not recall. The district court found this explanation to be "unbelievable given that Yeager was shown over twenty exhibits during his deposition in an attempt to refresh his recollection."

**[2]** Several of our cases indicate that a district court may find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember. In *Scamihorn v. General Truck Drivers*, we implied this result in dicta when we noted that a declaration could be considered a sham if the declarant provides information which he had testified he could not recall. 282 F.3d 1078, 1085 n.7 (9th Cir. 2002). We have also held that a witness can be punished for contempt of court when he refuses to give information "which in the nature of things [he] should know." *Collins v. United States*, 269 F.2d 745, 750 (9th Cir. 1959). In *Collins*, we quoted Learned Hand's example that to evade contempt of court " 'it could not be enough for a witness to say that he did not remember where he had slept the night before, if he was sane and sober . . . .' " *Id.* (quoting *United States v. Appel*, 211 F. 495, 495-96 (S.D.N.Y. 1913)). The utility of the sham affidavit rule to maintain summary judgment as integral to the federal rules, *Van Asdale*, 577 F.3d at 998, would be undermined if we were to hold that the rule did not apply in this case.

**[3]** We caution that newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999) (stating the general rule that parties may explain or attempt to resolve contradictions with an explanation that is sufficiently reasonable). " '[T]he non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.' " *Van Asdale*, 577 F.3d at 999 (quoting *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995). This is not a case in which a deponent's memory could credibly have been refreshed by subsequent events, including discussions with others or his review of documents, record, or papers.

**[4]** In this case, the district court found that "the disparity between the affidavit and deposition is so extreme that the court must regard the differences between the two as contradictions." This finding was not clearly erroneous. The district court could reasonably conclude that no juror would believe Yeager's weak explanation for his sudden ability to remember the answers to important questions about the critical issues of his lawsuit. It is implausible that Yeager could refresh his recollection so thoroughly by reviewing several documents in light of the extreme number of questions to which Yeager answered he could not recall during his deposition and the number of exhibits used during the deposition to try to refresh his recollection. Thus, the district court's invocation of the sham affidavit rule to disregard the declaration was not an abuse of discretion.[2]

---

[2]Yeager also asks us to generally "scruitin[ize]" the district court's evidentiary rulings, but does not ask us to overturn any ruling other than the finding of a sham declaration. Accordingly, we do not address any of Yeager's other arguments related to the district court's evidentiary rulings.

## IV. Republication on the Internet

Yeager filed this lawsuit in January 2008. He alleges that statements on the Aviation Autographs website violate his common law right to privacy and California's statutory right to publicity, Cal. Civ. Code § 3344. Both claims are subject to a two-year statute of limitations. *See Christoff v. Nestle USA, Inc.*, 213 P.3d 132, 135 (Cal. 2009). There is no evidence in the record that the Bowlins added any information about Yeager, or changed any of the challenged statements about Yeager on their website, after October 2003. The district court applied the single-publication rule, determined that the statute of limitations accrued in October 2003, and dismissed these two claims as untimely. Yeager challenges the district court's accrual calculation.

**[5]** "The single-publication rule limits tort claims premised on mass communications to a single cause of action that accrues upon the first publication of the communication, thereby sparing the courts from litigation of stale claims when an offending book or magazine is resold years later." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166-67 (9th Cir. 2011) (internal quotation marks omitted); *see also* Cal. Civ. Code § 3425.3. The single-publication rule applies to the internet. *Roberts*, 660 F.3d at 1167. In print and on the internet, statements are generally considered "published" when they are first made available to the public. *Id.*

**[6]** Under the single-publication rule, the statute of limitations is reset when a statement is republished. *See id.* A statement in a printed publication is republished when it is reprinted in something that is not part of the same "single integrated publication." *Christoff*, 213 P.3d at 137. For example, a statement made in a daily newspaper is not republished when it is repeated in later editions of that day's newspaper, *Belli v. Roberts Bros. Furs*, 49 Cal. Rptr. 625, 629 (Ct. App. 1966), but a statement made in a hardcover book is republished when it is repeated in a later paperback version of the

book, *Kanarek v. Bugliosi*, 166 Cal. Rptr. 526, 530 (Ct. App. 1980).

**[7]** Applying the single-integrated-publication test to non-traditional publications can be tricky. *See, e.g.*, *Christoff*, 213 P.3d at 141 (remanding to the trial court to develop record on whether different components of advertising campaign constitute a single integrated publication). One "general rule" is that a statement is republished when it is "repeat[ed] or recirculate[d] . . . to a new audience." *Hebrew Acad. of S.F. v. Goldman*, 173 P.3d 1004, 1007 (Cal. 2007). And we have previously held that, under California's single-publication rule, once a defendant publishes a statement on a website, the defendant does not republish the statement by simply continuing to host the website. *See Roberts*, 660 F.3d at 1169 (continuing to host a press release on a website is "inaction" which "is not a republication").

**[8]** Yeager argues that the website was republished, and the statute of limitations restarted, each time the Bowlins added to or revised content on their website, even if the new content did not reference or depict Yeager. For example, the reference to Yeager on the "News and Events" page was added in 2003, but that webpage also contains entries on other topics that were apparently added through the fall of 2009. Although one California Court of Appeal has noted in dicta that "[t]he modification to a Web site does not constitute a republication," *Christoff v. Nestle USA*, 62 Cal. Rptr. 3d 122, 138 (Ct. App. 2007), *rev'd in part*, *Christoff*, 213 P.3d 132, the California appellate courts have not squarely addressed this question. We reject Yeager's argument and hold that, under California law, a statement on a website is not republished unless the statement itself is substantively altered or added to, or the website is directed to a new audience. This holding is consistent with cases in which we have applied the single-publication rule to federal statutes and with decisions of other courts, and prevents freezing websites in anticipation of litigation.

In *Oja v. United States Army Corps of Engineers*, we rejected a plaintiff's argument that a defendant continuously republished information by hosting the information on a website. 440 F.3d 1122, 1132 (9th Cir. 2006). One reason, we explained, was that the website host "did not modify the substance of the published information following the initial posting of the private information." *Id.* In a footnote, we cautioned that "[o]f course, substantive changes or updates to previously hosted content that are not 'merely technical' may sufficiently modify the content such that it is properly considered a new publication." *Id.* at 1132 n.14 (citing *In re Davis*, 334 B.R. 874 (Bankr. W.D. Ky. 2005)). The case we cited in support held that the defendants republished defamatory material when they added substantive information regarding the plaintiffs to their website. *In re Davis*, 334 B.R. at 884, *aff'd in relevant part*, *Davis v. Mitan*, 347 B.R. 607, 612 (W.D. Ky. 2006).

Our holding is also consistent with *Canatella v. Van De Kamp*, 486 F.3d 1128 (9th Cir. 2007). In that case, we held the defendant did not republish the plaintiff's disciplinary summary when he added a "verbatim copy" of the summary to a different URL within the same domain name. *Id.* at 1135. If adding a verbatim copy of a statement to a different URL does not trigger republication, then leaving a statement unchanged while modifying other information on the URL should not trigger republication.

Other courts that have considered this question have reached the same conclusion. In *Firth v. State*, the New York Court of Appeals rejected plaintiff's argument that the defendant republished an allegedly defamatory report when it posted an unrelated report to its website because "it is not reasonably inferable that the addition was made either with the intent or the result of communicating the earlier and separate defamatory information to a new audience." 775 N.E. 2d 463, 466 (N.Y. 2002); *see also Atkinson v. McLaughlin*, 462 F. Supp. 2d 1038, 1051, 1055 (D.N.D. 2006) (updating names

and addresses of the board of directors listed on a website was not a republication because the "modification did not change the content or substance of the website that [plaintiff] alleges is defamatory in nature" and "did not reasonably result in communicating the alleged defamatory information to a new audience"). *Firth* has been cited with approval in two opinions of the California Courts of Appeal. *See Traditional Cat Ass'n, Inc. v. Gilbreath*, 13 Cal. Rptr. 3d. 353, 361 (Cal. Ct. App. 2004) (extensively quoting *Firth*'s holding that the single-publication rule applies to the internet); *Christoff*, 62 Cal. Rptr. 3d at 138 (citing *Firth* for its statement in dicta that "modification to a Web site does not constitute a republication").

In *Firth*, the New York Court of Appeals explained that allowing any modification of a website to trigger republication "would either discourage the placement of information on the Internet or slow the exchange of such information" by forcing a publisher " to avoid posting on a Web site or use a separate site for each new piece of information." 775 N.E. 2d at 467. We agree, and add that Yeager's suggested rule would encourage websites to be frozen in anticipation of and during potentially lengthy litigation. For example, Connie Bowlin notes in her declaration that "[b]ecause of this lawsuit, we have not edited [the "About Aviation Autographs" page] to update it, but intend to do so once this lawsuit is complete." We recognized in *Oja* that refusing to apply the single-publication rule to the internet would have " 'a serious inhibitory effect on the open, pervasive dissemination of information and ideas over the Internet, which is, of course, its greatest beneficial promise.' " 440 F.3d at 1132 (quoting *Firth*, 775 N.E.2d at 466). This reasoning would be undermined if the standard for republication is too easily met.

**[9]** Yeager suggests, citing Justice Werdegar's concurring opinion in *Christoff*, that republication is triggered when a publisher makes a conscious deliberate choice to reissue a publication. 213 P.3d at 143 (Werdegar, J., concurring).

Yeager argues that when the Bowlins edited some parts of the website, but left the challenged statements intact, they made a conscious choice to continue publishing the challenged statements. We reject this argument for two reasons. First, "Justice Werdegar's concurrence was not adopted by the majority and therefore is not the law of California." *Roberts*, 660 F.3d at 1168. Second, "even if it were, it would not help" Yeager. *Id.* If a defendant does not make a conscious choice to republish a statement by continuing to host the statement on a website, *id.*, the defendant does not make a conscious choice to republish the statement by continuing to host the statement and also modifying other parts of the website.

## V. Conclusion

The judgment of the district court granting summary judgment to Defendants is **AFFIRMED**.