Dale S. Fischer, United States District Judge
On February 17, 2018, the United States Bankruptcy Court filed a Report and Recommendation (R & R) and proposed findings recommending that this Court grant Chapter 7 Trustee-Plaintiff Jason Rund's motion for summary adjudication on his claim that Defendants made fraudulent transfers with actual intent. Defendants John Kirkland and Poshow Ann Kirkland (as trustee of the Bright Conscience Trust) object to the R & R, and submit additional evidence.
Pursuant to Rule 9033(d) of the Federal Rules of Bankruptcy Procedure, the Court has reviewed the additional evidence and the portions of the Bankruptcy Court's findings of fact to which written objections have been filed. For the reasons stated below, the Court rejects the recommendation and findings of the Bankruptcy Court and denies the motion for summary adjudication.
I. Facts and Procedural Background
This is one of several bankruptcy proceedings involving EPD Investment Co., LLC (EPD). See Dkt. 4. In December 2010, creditors commenced the involuntary petition at issue here. Appendix Record (REC), Dkts. 15-17, at 11982.
Pressman is the sole proprietor of EPD. Id. Plaintiff alleges EPD has not been profitable since before 2003. Id. Between 2003 and 2009, EPD allegedly lost money every year. See id. Plaintiff also alleges that EPD has operated as a Ponzi scheme since 2003, specifically alleging that EPD used investments it received to pay existing creditors. Id. By 2009, EPD had allegedly stopped making payments to its creditors because it lacked cash infusions from new investors. Id.
John Kirkland served as Pressman's lawyer for his various ventures and allegedly invested money in EPD. Id. The Trustee's basic allegation is that John Kirkland took various steps to hide EPD's financial condition. Therefore, the Trustee filed this suit against John Kirkland and Bright Conscience Trust, which is operated by Poshow Kirkland, seeking relief on claims for subordination and avoidance of fraudulent transfers. See id. The Trustee moved for summary adjudication on the issue of whether Defendants made fraudulent transfers with actual intent. Id. at 11996.
*716 Finding no dispute of material fact, the Bankruptcy Court concluded that EPD operated as a Ponzi scheme. Id. at 11991-92. In reaching this decision, the Bankruptcy Court excluded the Declaration of Jerrold Pressman and the declaration and report of Defendant's expert, J. Michael Issa (Issa Report). Id. at 11985-92. Because it deemed EPD a Ponzi scheme, the Bankruptcy Court applied the "Ponzi presumption" that Defendants are liable for fraudulent transfers. Id. at 11992-93. The Bankruptcy Court also concluded that Defendants engaged in fraudulent conduct based on the "badges of fraud" test. Id. at 11993. Defendants timely objected to the R & R, arguing that the Bankruptcy Court improperly excluded the Pressman Declaration and the Issa Report-which, if admitted, would have raised a genuine dispute of material fact precluding summary adjudication.
II. Standard of Review
Defendants contend that this Court reviews the Bankruptcy Court's findings of fact and conclusions of law de novo, citing Rule 9033(d). Written Objections at 1, Dkt. 9-1. Plaintiff concedes de novo review is appropriate for the findings of fact and conclusions of law as they relate to John Kirkland. Response to Written Objections at 6, Dkt. 7. But Plaintiff contends the Court reviews both findings of fact and conclusions of law for clear error as they relate to Poshow Kirkland, as trustee to Bright Conscience Trust, because Ms. Kirkland previously consented to the Bankruptcy Court's jurisdiction to hear and determine claims relating to her. Id. at 6-7 (citing 28 U.S.C. § 157(b)(1) ; In re EPD Inv. Co., LLC, 821 F.3d 1146, 1151 n.2 (9th Cir. 2016) ).
The Court disagrees. First, In re EPD Inv. Co. does not support Plaintiff's contention that Ms. Kirkland consented to the Bankruptcy Court's jurisdiction. The footnote citation that Plaintiff relies on is ambiguous and does not show that Ms. Kirkland consented to the Bankruptcy Court's jurisdiction. In re EPD Inv., 821 F.3d at 1151 n.2. Second, Plaintiff has not pointed to any evidence that Ms. Kirkland filed multiple proofs of claim in the debtors' bankruptcy case. See Response to Written Objection (Response) at 6, Dkt. 7. Nor could the Court find any evidence in the record supporting this argument. Plaintiff cites to the R & R to support its contention, id. at 7 n.24; but that portion of the R & R merely summarizes Plaintiff's allegations in his complaint. REC at 11982-84. Those allegations are not evidence that Ms. Kirkland consented to the Bankruptcy Court's jurisdiction. The Court will review this entire matter de novo.
III. Analysis
"A party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue *717 for trial. Id. at 323-24, 106 S.Ct. 2548 ; Fed. R. Civ. P. 56(c)(1).
"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Rather, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal brackets and ellipsis omitted).
The Court will first consider Defendants' contention that the Bankruptcy Court improperly excluded the Pressman Declaration and Issa Report. It will then consider whether the Bankruptcy Court properly granted summary adjudication on the issue of whether EPD's transfers were fraudulent.
A. The Pressman Declaration is Admissible
The Bankruptcy Court first found the Pressman Declaration inadmissible under the sham affidavit rule. A party cannot create an issue of fact precluding summary judgment by introducing an affidavit contradicting his prior testimony. See Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (comparing prior deposition testimony to affidavit).
"[The] sham affidavit rule prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. But the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment. In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's [earlier statement] and subsequent affidavit must be clear and unambiguous to justify striking the affidavit."
Id. (internal citations and quotation marks omitted). Because tax returns must be filed under penalty of perjury, see United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars, 403 F.3d 448, 466 (7th Cir. 2005), courts have stricken declarations that conflict with a declarant's tax return under the sham affidavit rule. See, e.g., id.; United States v. $353,443 in U.S. Currency, 701 F. App'x 493, 497 (7th Cir. 2017).
Pressman declared: "EPD was a legitimate, ongoing, sustainable, revenue-producing, business operation." REC at 11992. The Bankruptcy Court concluded that this statement conflicted with his 2010 tax return, in which Pressman attested that EPD had $70 million in liabilities and no realized assets that year. REC at 11992. The Bankruptcy Court also found (1) that Pressman could not opine on whether EPD operated as a Ponzi scheme because he is not an accountant, and (2) his statements should be excluded as vague and self-serving. Id. at 11991-92.
Excluding the Pressman Declaration was error. First, the Pressman Declaration does not necessarily conflict with EPD's 2010 tax return. Plaintiff alleged that EPD's illegal conduct took place between 2003 and 2009. REC at 11982. But EPD could have been sustainable during some of those years, as Pressman declares. Likewise, EPD could have financially collapsed in 2010, as EPD's 2010 tax returns reflect. Indeed, Defendants suggest that *718 the "Great Recession" was the root of EPD's financial collapse. Written Objections at 1-2. Certainly, the Court is skeptical that EPD had $70 million in liabilities in 2010, yet was a sustainable business for the prior seven years-even in light of the recession. However, the alleged inconsistency is not so "clear and unambiguous" that it justifies striking the affidavit." See Yeager, 693 F.3d at 1080.
Nor does Pressman need to be an accountant to testify that EPD did not operate as a Ponzi scheme. The perpetrator of a Ponzi scheme "must know that the scheme will eventually collapse as a result of the inability to attract new investors." Mark A. McDermott, Ponzi Schemes & the Law of Fraudulent & Preferential Transfers, 72 Am. Bankr. L.J. 157, 174 (1998) (citing In re Indep. Clearing House Co., 77 B.R. 843, 860 (D. Utah 1987) ). Pressman could testify that he did not operate EPD as a Ponzi scheme, even though he is not an accountant, because a Ponzi scheme requires the participant to know that the scheme is unsustainable. In re Indep. Clearing House Co., 77 B.R. at 860. In fact, Pressman testifies in detail to this effect in his Supplemental Declaration. Supplemental Declaration of Jerrold Pressman, Dkt. 9-4.
Additionally, the Bankruptcy Court erred in holding Pressman's declaration lacked a proper foundation. REC at 11992. Specifically, the Bankruptcy Court refused to consider a chart in Pressman's declaration documenting EPD's cash flow, finding that the chart was created to support Pressman's statements, and thus, could not create a genuine dispute of material fact. Id. To the contrary, Pressman declared that he created the chart by using EPD's general ledger, which contained EPD's financial information that had been maintained over four decades. REC at 9910-11, 9913, 9926.
The Pressman Declaration is admissible. In any event, to address the Bankruptcy Court's concerns and its conclusion that the original declaration was vague and conclusory, Pressman submits a more detailed and fact-based Supplemental Declaration.
B. The Issa Report is Admissible
Defendants also contend the Bankruptcy Court improperly excluded the Issa Report. Written Objections at 21-27. The Bankruptcy Court concluded Issa's Report was inadmissible because it was based on: (1) insufficient facts, (2) unreliable principles and methods, and (3) a faulty application of principles and methods to the facts here. REC at 11986. The Bankruptcy Court also excluded Issa's Report because it was a sham. Id. at 11987.
1. Issa's Report Satisfies Daubert
A party wishing to introduce expert testimony must show that the proposed testimony is admissible under Rule 702 of the Federal Rules of Evidence. Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007). Rule 702 provides:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.
If the proposed testimony does not satisfy Rule 702's requirements, the district court must exercise its "gatekeeper" function *719 and exclude the testimony. See Cooper, 510 F.3d at 942. But a court may not exclude expert testimony simply because it finds the testimony unpersuasive or because the opponent has offered cogent criticisms of that testimony. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
First, the Issa Report was not based on insufficient facts. The Bankruptcy Court found that Issa relied on unaudited financial statements and ignored EPD's tax returns in forming his opinion. REC at 11986. But Issa's reliance on unaudited financial statements and his failure to rely on EPD's tax returns goes to the weight of his testimony-not whether the evidence is admissible. Kennedy v. Collagen Corp., 161 F.3d 1226, 1231 (9th Cir. 1998) ("Disputes as to ... faults in his use of a particular methodology ... go to the weight, not the admissibility, of his testimony." (brackets and citation omitted) ). In any event, Issa has supplemented his declaration, noting that EPD's tax returns do not change his conclusion. Supplemental Declaration of J. Michael Issa ¶ 12, Dkt. 9-3. Thus, Issa has cured the defect the Bankruptcy Court identified, even if his Report was initially based on insufficient facts.
Next, the Bankruptcy Court took issue with Issa's methodology, finding that his partial forensic accounting was insufficient. Id. at 11988-89. The Bankruptcy Court acknowledged that "a sampling of transactions might be sufficient under certain circumstances." Id. at 11988. But it found that the forensic accounting here was insufficient because Issa had not looked at EPD's tax returns or its post-2003 leases. Id. at 11989.
The Issa Report should not have been excluded on this basis. Issa's partial forensic accounting is sufficient to satisfy the requirements of Rule 702(b). Cf. United States, ex rel. Jordan v. Northrop Grumman Corp., No. CV 95-2985 ABC (Ex), 2003 WL 27366252, at *4 (C.D. Cal. Mar. 10, 2003) (allowing expert to testify about wreckage at a crash site, even though he only conducted a partial analysis of the maintenance record because some evidence was unavailable). Second, as mentioned above, Issa notes in his Supplemental Declaration that he has looked at EPD's tax returns, and that the additional evidence does not change his conclusion. Supplemental Report of Issa ¶ 12.
Issa's Report satisfies the requirements of Rule 702.
2. Issa's Report is Not a Sham
The Bankruptcy Court also excluded the Issa Report on the basis that it is a sham. According to the Bankruptcy Court, Issa's Report conflicts with his deposition. REC 11987-98. In his Report, Issa attested that Jonavic's[2] testimony should be given considerable weight because there is no reason for Jonavic to lie. REC 11987-88. However, Issa testified in his deposition that he did not consider whether Jonavic's testimony was accurate. Id. Moreover, the Bankruptcy Court found troublesome Issa's explanation that he did not consider whether the Jonavic deposition was accurate until he reviewed the Jermiassen[3] deposition. Id. at 11987. The Jermiassen deposition was not taken until two months after Issa submitted his Report. Id. The Bankruptcy Court concluded that Issa's deposition and Report were clearly and unambiguously contradictory, *720 and thus excluded the Report under the sham affidavit rule. Id.
Issa's Report does not so clearly conflict with his deposition to justify excluding it under the sham affidavit rule. Issa acknowledges that he gave Jonavic's deposition a cursory review before preparing his Report. Id. at 11987. This does not clearly and unambiguously conflict with the statement that Jonavic's deposition testimony should be given considerable weight because he has no reason to lie. Id. at 9593. Issa's deposition and Report are reconcilable: even though Issa gave a cursory review of Jonavic's deposition, he gave a lot of weight to this cursory review in his Report. Issa's methodology affects the weight of his Report, not its admissibility. See Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1188 (9th Cir. 2002) (noting that objections to the inadequacies of studies go towards the weight of evidence, not its admissibility). Issa's Report does not so clearly and unambiguously conflict with his deposition that the sham affidavit rule applies. See Yeager, 693 F.3d at 1080.
3. The Bankruptcy Court Improperly Resolved a Disputed Issue of Fact to Justify Excluding Issa's Report
The Bankruptcy Court excluded the Issa Report because it concluded "there is simply too great an analytical gap between the data and the opinion proffered." Id. at 11990 (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ). According to the Bankruptcy Court, between 2003 and 2010, EPD had approximately $10.85 million in negative cash flows while it raised $64.52 million from investors. REC at 11990-91. And according to the Bankruptcy Court, having a negative cash flow of 16.8% of the amount raised from investors does not give investors a realistic opportunity to profit. Id. at 11991.
This conclusion is problematic for several reasons. By accepting Jermiassen's numbers and analysis when Defendants presented contrary evidence, the Bankruptcy Court improperly resolved a disputed issue of fact. Companies may suffer from negative cash flows for several years; a company is not a Ponzi scheme merely because it is has negative cash flow for several years. In re Juliet Homes, LP, Bankruptcy No. 07-36424, 2013 WL 5674398, at *5 (Bankr. S.D. Tex. Oct. 17, 2013) (in resolving a motion for summary judgment, court held that the fact a company generated negative cash flows was not conclusive that the company operated as a Ponzi scheme). Defendants have introduced sufficient evidence that EPD tried to legitimately invest its money. See, e.g., REC at 9913-14. The Court cannot resolve this factual dispute on a summary adjudication motion. Chevron Corp., 974 F.2d at 1161.
The Bankruptcy Court thus erred in concluding that the Issa Report is inadmissible.
C. The Bankruptcy Court Improperly Granted Summary Adjudication
The Pressman Declaration and the Issa Report[4] raise a genuine dispute of material fact as to whether EPD operated as a Ponzi scheme. Because the Bankruptcy Court incorrectly concluded that EPD operated as a Ponzi scheme as a matter of law, it also incorrectly presumed the transfers at issue were fraudulent pursuant to 11 U.S.C. §§ 548(a)(1) and 544 -the Ponzi scheme presumption.
The Bankruptcy Court also concluded that the transfers at issue here *721 were actually fraudulent based on the "badges of fraud." Those include: "(1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and, after the transfer, (5) retention by the debtor of the property involved in the putative transfer." Acequia, Inc. v. Clinton (In re Acequia, Inc.), 34 F.3d 800, 806 (9th Cir. 1994) (quotation and citation omitted) (emphasis removed).
The Bankruptcy Court's conclusion that the badges of fraud were present was based almost entirely on the fact that John Kirkland was an insider of EPD.[5] REC at 11993-94. In reaching this conclusion, the Bankruptcy Court noted that "[e]ven in situations in which [John Kirkland] did not formally represent EPD, he controlled EPD's legal strategy." Id. To support this proposition, the Bankruptcy Court relied on a single email between John Kirkland and an associate at his former law firm. Id. But one email in which John Kirkland instructs his associate not to send a demand letter on behalf of EPD is far from sufficient to conclude as a matter of law that John Kirkland is an EPD insider.
The Bankruptcy Court also noted that other badges of fraud exist. Id. at 11994. However, it apparently listed only some of the badges of fraud it concluded were present: (1) litigation had been threatened at the time the UCC-1 was recorded, (2) EPD was experiencing cash flow issues at that time, and (3) the transfers consisted of "substantially all" of EPD's remaining assets. Even assuming these facts are undisputed, the supplemental declarations of Kirkland and Pressman provide explanations that prevent the Court from finding the transfers were fraudulent as a matter of law. The Court concludes that the Bankruptcy Court erred in finding that the badges of fraud established actual fraud as a matter of law.
The Court rejects the Bankruptcy Court's R & R and DENIES Plaintiff's motion for summary adjudication on the issue of whether the transfers were actually fraudulent.
IV. Motion to Strike
Plaintiff contends the Court should strike Defendants' Reply because Rule 9033 does not contemplate such a filing. See generally Mot. to Strike Reply Br., Dkt. 13. Courts that have considered the issue have acknowledged that an objector must obtain a court's permission before filing a reply in support of an objection to a bankruptcy court's report and recommendation. See, e.g., Cambron v. Med. Data Sys., Inc. (In re Cambron), 379 B.R. 371, 374 (M.D. Ala. 2007) ; Reliance Ins. Co. v. Colonial Penn Franklin Ins. Co. (In re Montgomery Ward & Co., Inc.), 344 B.R. 256, 261 (D. Del. 2006) ; Life Ins. Co. v. Ropes & Gray (In re Monarch Capital Corp.), 173 B.R. 31, 34 (D. Mass. 1994). Defendants contend that Local Rule 7-10 permits them to file a reply here. Opp'n to Mot. to Strike Reply Br. at 5, Dkt. 14. Defendants are incorrect. Local Rule 7-10 applies to motions filed in this Court. It does not apply to written objections, such as the one filed by Defendants. The Court STRIKES Defendants' Reply.
Plaintiff also request sanctions in the form of attorneys' fees for Defendants'
*722 improper Reply. Although the Court may impose sanctions on parties for engaging in bad faith litigation, Goodyear Tire & Rubber Co. v. Haeger, --- U.S. ----, 137 S.Ct. 1178, 1186, 197 L.Ed.2d 585 (2017), this is not such a case. Plaintiff acknowledges that Defendants met and conferred regarding the possibility of withdrawing the Reply. Nevertheless, Defendants maintained that Local Bankruptcy Rule 9013-1(g) allowed such a filing. Mot. to Strike at 7. Although the Local Bankruptcy Rule does not apply in this Court, this was not an unreasonable position to take, given there is no case on point, and there is no evidence that Defendants acted in bad faith. The request for fees is denied.
V. Conclusion
The Court REJECTS the Bankruptcy Court's R & R and DENIES the Trustee's Motion for Summary Adjudication. The Court STRIKES Defendants' Reply.[6]
IT IS SO ORDERED.

The standards for summary judgment and summary adjudication are the same. See California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).

Jonavic is Pressman's CPA. REC at 11986.

Jermiassen in Plaintiff's expert. REC at 11991.

Even if the original submissions were not sufficient to raise a genuine issue, the supplemental submissions do so.

The Bankruptcy Code defines an "insider" if the debtor is a corporation as: (1) the director of the debtor, (2) officer of the debtor, (3) person in control of the debtor, (4) partnership in which the debtor is a general partner, (5) general partner of the debtor, or (6) relative of a general partner, director, officer, or person in control of the debtor. 11 U.S.C. §§ 101(31)(B)(i)-(vi). It does not appear that Kirkland was any of these.

Plaintiff and Defendants ask the Court to take judicial notice of several filings from other bankruptcy proceedings. Dkts. 9-1; 13-2. Because the Court does not rely on those filings in its ruling, the Court DENIES these requests for judicial notice as moot.