NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 25 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

HOLLY PEREZ,

Plaintiff-Appellant,

v.

UNITED PARCEL SERVICE, INC.,

Defendant-Appellee.

No. 21-16538

D.C. No. 3:19-cv-08050-WHO

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted June 16, 2022
San Francisco, California

Before: BYBEE, CALLAHAN, and COLLINS, Circuit Judges.

Plaintiff-Appellant Holly Perez appeals the district court's grant of summary

judgment to Defendant-Appellee United Parcel Service, Inc. ("UPS") in this

employment discrimination action. The district court had jurisdiction under 28

U.S.C. § 1332(a), and we have jurisdiction under 28 U.S.C. § 1291. We affirm.

**I**

We find no abuse of discretion in the district court's evidentiary rulings. *See*

*Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005).

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

## A

UPS supported its summary judgment motion with the declaration of Mickal Mengsteab, a UPS security manager who investigated allegations that Perez had committed timecard fraud and retaliated against her subordinates. Federal Rule of Civil Procedure 26 generally requires parties to disclose "the name . . . of each individual likely to have discoverable information" unless the information has "otherwise been made known to the other parties during the discovery process." FED. R. CIV. P. 26(a)(1)(A)(i), (e)(1)(A). Although UPS did not identify Mengsteab in its Rule 26 disclosures, it was reasonable for the district court to conclude that UPS sufficiently disclosed Mengsteab's identity through discovery. UPS produced multiple emails establishing that Mengsteab participated in the investigations, and he was discussed briefly during the deposition of UPS's security director. Accordingly, we cannot say that the district court abused its discretion by denying Perez's motion to strike Mengsteab's declaration.

## B

The district court did not abuse its discretion by denying Perez's motion to strike the declaration of UPS's former outside counsel, which included as exhibits a set of timecard audit reports and a set of grievances allegedly filed against male UPS managers. These documents were offered to refute Perez's assertions that they had not been produced in discovery, rather than to prove the truth of the

matter asserted—*i.e.*, that Perez committed timecard fraud or that grievances were filed against male managers. Specifically, Perez had stated in her brief opposing summary judgment that "UPS has no independent evidence whatsoever in its Motion that Perez actually 'falsified' timecards. . . . [N]othing was ever produced"; that "UPS has not provided any evidence of grievances filed against male managers, because they do not exist"; and that "there was no evidence of grievances filed against male managers" (emphases omitted). UPS responded by attaching the exhibits and stating, "In contradiction to Plaintiff's repeated . . . false declarations to the Court, UPS produced hundreds of grievances filed by the union against male managers" and "Plaintiff boldly claims that copies of the timecard audit reports were never produced. This is simply just untrue. They were produced in discovery." UPS's counsel had personal knowledge that these documents had been produced in discovery, and we therefore reject Perez's argument that the declaration fails to comply with the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").[1]

---

[1] To the extent that Perez contends that the district court improperly considered the documents attached to Carter's declaration in its substantive rulings, we need not address that issue because, as our later discussion makes clear, we do not rely on them in affirming those rulings.

**C**

The district court did not abuse its discretion by striking as irrelevant the statement in Perez's declaration that she had been harassed by a UPS driver named George Torres. Perez specifically agreed in her deposition that George Torres's conduct was not at issue in this case.

**D**

The district court did not abuse its discretion by granting UPS's motion to strike statements in Perez's declaration that (1) asserted she had been harassed by a Union steward named Robert Vela and (2) significantly altered "the specific conduct" and "frequency of 'harassing' incidents from what Perez testified during her deposition."

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Van Asdale v. International Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (citation omitted). In order to invoke this so-called sham affidavit rule, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous," and "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Id*. at 998–99 (citations omitted).

Perez testified in her deposition that she had been harassed by only three

people—Johnny Gallegos, David Padilla, and Henry Huerta.[2] She confirmed that "for the purpose of this lawsuit," there was not "anyone else other than those three individuals that [she was] claiming unlawfully harassed [her]." However, Perez stated in her subsequent declaration that she had also been harassed by Robert Vela. The district court reasonably concluded that "the inconsistency is clear and unambiguous," and it did not abuse its discretion by striking the statements regarding Vela.

Relatedly, Perez testified in her deposition that she had been harassed by Gallegos, Padilla, and Huerta in specific ways on only a few discrete occasions. Specifically, she stated that Gallegos harassed her by slamming his hand on her desk, telling her that he "would turn the center upside down," confronting her at a prework coordination meeting in front of other employees, and filing "false grievances" against her. Similarly, Perez testified that Padilla harassed her in "three conversations" in which he slammed papers on her desk, pointed his finger in her face, told her not to talk to certain Union members, and denied harassing her. Finally, Perez testified that Huerta harassed her by "asking for documents and information" for "about two weeks straight." Perez confirmed that she "can't think of anything else at this time that [she] would consider harassing that [Gallegos,

---

[2] As discussed in further detail below, Johnny Gallegos was a Union business agent and was not employed by UPS. David Padilla and Henry Huerta were both UPS drivers who also served as Union stewards.

Huerta, and Padilla] did."

However, in her declaration Perez describes the alleged harassment as much more severe and frequent. For example, she states that:

- "Mr. Gallegos and Mr. Padilla did not stop harassing me."

- "David Padilla and Henry Huerta . . . yelled at me on a daily basis."

- The "hostile work environment created by David Padilla . . . was escalating in severity every day with screaming, abusive conduct, and physically threatening behavior with getting into my face and using his physicality in a threatening manner."

- "I tried to speak professionally with David Padilla about his conduct, but he just laughed in my face and said that they had held a meeting where it was discussed how they would get rid of me. I . . . was starting to have fear for my personal safety because the harassment was continuing to be very intense on a daily basis in terms of rude conduct, screaming, undermining my direction, and challenging my authority . . . ."

These inconsistencies are not "minor" or "newly-remembered facts . . . accompanied by a reasonable explanation," *see Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012), and it was reasonable for the district court to conclude that the statements "are so inconsistent with [Perez's] earlier testimony that they

6

constitute a sham." Accordingly, we cannot say that the district court abused its discretion by granting UPS's motion to strike.

## II

Reviewing the district court's summary judgment ruling de novo, *see Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1001 (9th Cir. 2019), we hold that summary judgment was properly granted to UPS on all claims.

## A

Perez's gender discrimination claim under California Government Code § 12940(a) fails as a matter of law. "California has adopted the three-stage burden-shifting test established by the United States Supreme Court [in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),] for trying claims of discrimination . . . based on a theory of disparate treatment." *Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1113 (Cal. 2000). "[T]he *McDonnell Douglas* test places on [plaintiffs] the initial burden to establish a prima facie case of discrimination," *id*.; *see also McDonnell Douglas*, 411 U.S. at 802, which requires them to show, *inter alia*, that they "were qualified for their positions and performing their jobs satisfactorily." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (citation omitted).

Here, there is no genuine dispute that Perez was not performing her job satisfactorily. Perez conceded at her deposition that she did not "act with honesty

7

and integrity with [her] employment at UPS" because she "corrected timecards when [she] shouldn't." She also testified that she "instructed [her] part time supervisors to change timecards . . . any time a meal violation report would come up." No reasonable jury could accept Perez's argument that, in this testimony, she "was simply repeating what she had been accused of," rather than conceding that she had improperly edited timecards. And although UPS permits managers to edit timecards to correct inaccurate information, there is no genuine dispute that Perez edited timecards so that they would reflect false information. For example, Perez does not dispute that she directed her subordinates to "sprinkle" time throughout the week to make up for timecard errors from previous weeks.

**B**

Perez's hostile work environment claim under California Government Code § 12940(j) fails as a matter of law. To survive summary judgment, Perez must present sufficient evidence to show that she experienced gender-based harassment that was "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Lyle v. Warner Bros. Television Prods*., 132 P.3d 211, 220 (Cal. 2006) (citation omitted). To the extent that the alleged harassment was committed by non-UPS employees, Perez must also make the further showing that UPS failed to take "immediate and/or corrective actions when it knew or should have known" of their harassing conduct. *See Folkerson v.*

8

*Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997); *see also* CAL. GOV'T CODE § 12940(j)(1).

No reasonable jury could conclude that Padilla or Huerta harassed Perez because of her gender. Perez conceded at her deposition that she had no "reason to believe that Mr. Padilla and Mr. Huerta were engaging in the kind of conduct toward [her] that they were because [she was] a woman." She also testified that Padilla and Huerta never commented on her gender and that they never made any sexually inappropriate or sexist remarks to her. Moreover, no reasonable jury could conclude that Padilla's and Huerta's alleged harassment was sufficiently severe or pervasive to be actionable. As discussed above, Perez testified that Padilla "slammed a piece of paper" on her desk, "pointed his finger" in her face, "got upset" with her about grievances, and denied harassing her. Perez also testified that Huerta "ask[ed] [her] for documents and information on a regular basis." No reasonable jury could find this conduct "alter[ed] the conditions of [Perez's] employment and create[d] an abusive work environment." *See Lyle*, 132 P.3d at 220.

Assuming that there were triable issues as to whether Perez suffered sufficiently severe gender-based harassment by Gallegos—who was employed by the Union and not UPS—no reasonable jury could find that UPS failed to take "immediate and appropriate corrective action" in response to Perez's complaints.

9

*See* CAL. GOV'T CODE § 12940(j)(1). Perez emailed three UPS managers on March 13, 2019, stating that she thought Gallegos was harassing her by filing grievances against her and by approaching her with issues and concerns without an appointment.[3] UPS's director of labor relations responded 21 minutes later. In his response, he addressed questions that Perez had posed in her email, offering to help "show [her] how to research" certain information that she sought. He affirmed that Perez can and should request that Gallegos make an appointment before coming to her office to raise issues. He also stated, "I am booked for the most part until the second week of April. I will set a date and come to your building and sit down with Johnny [Gallegos] and the stewards and lay the foundation in which they will approach you in. I will also spend time with you on how to react and put together a case on someone and start to make people back off." At the subsequent meeting on April 9,[4] the director of labor relations addressed the underlying conduct that Perez complained about and confirmed with Perez and Gallegos that they "can move forward." Perez complained of Gallegos's conduct again on July 9.[5] UPS properly investigated the complaint and concluded that the hostile work

---

[3] Perez also told one of the managers in early March that she thought Gallegos was "picking" on her by filing grievances against her "because [she's] female."

[4] On March 25, Perez complained about the number of grievances filed against her by a UPS driver whose conduct is not at issue in this case.

[5] Perez was placed on administrative leave two days later, so she had no further interactions with Gallegos at UPS.

environment complaint was unsubstantiated. Under these circumstances, no reasonable jury could find that UPS failed to take appropriate corrective actions in response to Perez's complaints.[6]

## C

Perez's retaliation claim fails as a matter of law. To survive summary judgment, Perez must be able to show "that she engaged in protected activity, that she suffered a materially adverse action, and that there was a causal relationship between the two." *Westendorf v. West Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013). "Thereafter, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

Assuming that Perez can establish a prima facie case, there is no genuine dispute that UPS had a legitimate, non-pretextual reason for terminating her employment. Perez was fired for allegedly committing timecard fraud and retaliating against her subordinates.[7]

---

[6] Perez lodged several additional complaints, but the record contains no evidence that she mentioned Gallegos's conduct in these complaints. For example, Perez's complaints in May and June focus exclusively on Padilla's conduct.

[7] We reject Perez's argument that there is a triable issue as to the reason for her

11

As discussed above, Perez concedes that she violated UPS's Honesty and Integrity policy by improperly editing timecards, *see supra* at 8, and there is no genuine dispute that this was a terminable offense. Even if we were to accept Perez's factually unsupported speculation that her alleged harassers fabricated the anonymous complaint that led UPS to initiate the timecard fraud investigation, there is no genuine dispute that UPS properly found the complaint to be substantiated and that the alleged harassers had no influence over the decision to terminate Perez's employment. *Cf. Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) (holding that a retaliation claim can be based on a subordinate's actions "if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process").

Similarly, Perez cannot establish pretext with respect to UPS's explanation that she retaliated against her subordinates. UPS investigated this allegation after one of Perez's subordinates submitted a complaint alleging that Perez retaliated against her for assisting with the timecard fraud investigation and for filing a complaint against Perez. UPS properly investigated the allegation and concluded that it was substantiated. We reject the argument that UPS's failure to interview

termination. Although one witness stated that Perez was fired for only retaliation, the Human Resources employee responsible for the decision stated that Perez was fired for committing timecard fraud and retaliating against her subordinates.

Perez (who was on administrative leave at the time) and a particular labor manager creates a triable issue as to whether UPS's explanation was pretextual.

Finally, we reject Perez's argument that the timing and severity of her discipline create triable issues as to whether UPS acted pretextually. With respect to timing, UPS completed the timecard fraud investigation and received the retaliation complaint *before* Perez filed her official complaint on July 9. Although Perez complained of harassment several months before these investigations began, no reasonable jury could conclude that UPS terminated Perez's employment for these complaints and not for allegedly committing timecard fraud and retaliating against her subordinates. With respect to severity, Perez has presented no evidence that would permit a reasonable jury to conclude that termination is a disproportionate penalty for committing timecard fraud and retaliation.

## D

Perez concedes that her "remaining claims are derivative of [her] primary claims." Because Perez's primary claims fail, her remaining claims—failure to prevent discrimination, harassment, and/or retaliation; wrongful termination in violation of public policy; and intentional infliction of emotional distress—likewise fail.

**AFFIRMED.**

13